WM. R. HART & CO. v. GEO. P. COOPER ET AL.

APPEAL BY GEORGE P. COOPER FROM THE COURT OF COMMON PLEAS OF DAUPHIN COUNTY.

| 129 | 297 |
| 147 | 606 |
| 129 | 297 |
| 159 | 560 |
| 129 | 297 |
| 28 SC | 133 |
| 129 | 297 |
| 32 SC | 184 |

Argued June 4, 1889—Decided June 28, 1889.

[To be reported.]

1. There is no provision in the act of July 12, 1842, P. L. 339, making the proceedings under a warrant of arrest, subsequent to the issuing of the warrant, a part of the record; and, upon a certiorari bringing up such a record, the Supreme Court can do no more than determine whether the affidavit on which the warrant was based is sufficient to justify it.

2. If a contract creating a debt be free from fraud at the time it is made, a subsequent fraudulent breach of its conditions by the debtor, will not convert the indebtedness arising from it into a debt fraudulently contracted, within the meaning of that term as used in § 3, act of July 12, 1842, P. L. 339.

(a) An affidavit in support of an application for a warrant of arrest, averred that the plaintiffs had shipped certain iron, purchased from them by the defendants, to the plaintiffs' agent, in care of the defendants, upon an agreement with the latter that it should remain in the cars unloaded and in the custody of said agent, until it should have been fully paid for.

(b) The affidavit further averred that the defendants, in violation of said agreement and in fraud of the plaintiffs' rights, had taken possession of said iron and converted it to their own use without paying for it, and had thus fraudulently incurred, within the meaning of the act of July 12, 1842, a debt or obligation for which a suit had been brought against them by the plaintiffs.

3. These averments were at most an averment of a fraudulent breach of a contract not originally tainted with fraud, and, there being no averment connecting the subsequent fraud with the original purchase of the

iron, the affidavit was insufficient to justify issuing a warrant, applied for upon the ground that the debt arising from that purchase was fraudulently contracted.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 22 May Term 1889, Sup. Ct.; court below, No. 300 January Term 1889, C. P.

On November 22, 1888, William R. Hart & Co. brought trespass against George P. Cooper and Charles H. Reynolds, trading as Cooper, Reynolds & Co., to recover damages for the alleged fraudulent conversion to their own use by the defendants of certain pig iron belonging to the plaintiffs. The summons having been served upon George P. Cooper, but not on the other defendant, the plaintiffs on November 28, 1888, applied to SIMONTON, P. J., for a warrant of arrest against the defendants under the act of July 12, 1842, P. L. 339.

In support of the application the plaintiffs filed the following affidavit:

"Geo. T. Barnes, a member of the firm of Wm. R. Hart & Co., the plaintiffs in the above stated case, being duly affirmed according to law, deposes and says, that a suit has been duly commenced in the Court of Common Pleas of Dauphin county, to No. 300 January Term 1889, against George P. Cooper and Charles H. Reynolds, doing business near Harrisburg, in said county, as Cooper, Reynolds & Co., for the recovery of a debt or demand due to the said Wm. R. Hart & Co. from the said Cooper, Reynolds & Co., amounting to $549.39, with interest thereon from the 16th day of June, 1888, together with unliquidated damages thereon, the nature and character of which demand is as follows: That on or about the 14th and 18th days of June, 1888, respectively, the said Wm. R. Hart & Co., upon the order of one W. S. Pilling, per Ezra Bertolet, an iron commission merchant, residing in the city of Philadelphia, at the request of the said Cooper, Reynolds & Co., and in accordance with the usages of the trade, shipped from Steelton, Pa., two car loads of pig iron consigned to the said W. S. Pilling, in care of the said Cooper, Reynolds & Co., who then operated a rolling mill near Harrisburg, Pa., known as the Lochiel Rolling Mills; that the said pig iron was so shipped with the express un-

derstanding and agreement that the same should be and remain in the cars unloaded and in the possession and custody of the said W. S. Pilling for account of the said Wm. R. Hart & Co., until it should be fully paid for by the said Cooper, Reynolds & Co.; that the manner of said shipment and consignment was with the knowledge and consent of said Cooper, Reynolds & Co., and for the purpose of carrying out said agreement, and each shipment was therefore accompanied by a sight draft upon Cooper, Reynolds & Co., for the price or value thereof, together with an order from the said Pilling to the Pennsylvania Railroad Company, authorizing them to deliver said iron to said Cooper, Reynolds & Co., on payment of the accompanying drafts; that agreeably to this agreement pig iron to the amount of 37 tons, 16 cwt., 0 qrs., 38 lbs., belonging to the said Wm. R. Hart & Co., of the value of $549.39, was shipped to the said W. S. Pilling, in care of the said Cooper, Reynolds & Co., at Lochiel, Pa., where said Lochiel Rolling Mills are located; that the said Cooper, Reynolds & Co., in violation of their express agreement and in fraud of the rights of the said William R. Hart & Co., immediately took possession of the said pig iron and converted the same to their own use by working it up in the said mills, and have refused to pay, and do still refuse to pay, said drafts or either of them, or in any way to account to said Wm. R. Hart & Co. for the pig iron thus fraudulently obtained and used; and that by reason of the facts as above stated the said Geo. P. Cooper and Charles H. Reynolds, doing business under the name and style of Cooper, Reynolds & Co., have fraudulently incurred the debt or obligation for which the above entitled suit is brought, within the meaning of the act of July 12th, 1842."

Affidavits made by Ezra Bertolet and W. S. Pilling were also filed.

Bertolet's affidavit set forth that he was an iron commission merchant doing business in Philadelphia; that the negotiations for the pig iron mentioned in the affidavit of George T. Barnes were carried on through the affiant, and the statements in Barnes's affidavit as to the manner in which said pig iron should be shipped and consigned were true; that the manner of its shipment and consignment is not unusual in the iron trade, is well understood by both dealers and consignees, and was well

understood at the time by Cooper, Reynolds & Co ; "that said shipment was so made because said Cooper, Reynolds & Co. were not in good credit, and the said Wm. R. Hart & Co. were unwilling that said iron should be delivered to them until the same was fully paid for; that the said Cooper, Reynolds & Co. well knew the purpose intended to be effected by such shipment and consignment, and the taking possession of and using said iron by them was a palpable fraud upon said Wm. R. Hart & Co., as the said Cooper, Reynolds & Co. well knew."

Pilling's affidavit stated that the affidavit made by George T. Barnes contained "a true and correct statement of the facts relating to the manner in which the said Cooper, Reynolds & Co., fraudulently obtained possession of and used the pig iron therein mentioned;" that the connection of affiant with said transaction was as agent of Wm. R. Hart & Co.; that said pig iron was shipped and consigned in the manner detailed, for the express purpose of retaining possession and control thereof until paid for by Cooper, Reynolds & Co., for the reason that they were not in good credit; that Cooper, Reynolds & Co. well knew the purpose intended, and their taking possession of and using said iron " was in direct violation of the terms of said shipment and consignment, as well as a fraud upon the said Wm. R. Hart & Co."

Upon the reading of these affidavits, the judge granted the warrant of arrest applied for, under which George P. Cooper was arrested the same day, the sheriff returning non est inventus as to Charles H. Reynolds.

On December 10, 1888, George P. Cooper filed his affidavit in answer to the affidavits filed by the plaintiffs, denying the charges of fraud therein contained, and praying that the warrant of arrest be quashed and that the affiant be discharged, for the following reasons:

1. The affidavits filed do not set forth any facts showing that the defendants fraudulently contracted the debt or incurred the obligation respecting which suit is brought.

2. The said affidavits do not show that the defendants, or either of them, personally contracted the debt in suit or took possession of the pig iron, the subject matter of the suit, or procured the delivery of the same at defendants' mill.

3. That the acts of the defendants in the matter of obtaining

Opinion of Court below.

possession of the said pig iron, as alleged in said affidavits, if in violation of the rights of the plaintiffs, as alleged, amounted to a tort and not to the fraudulent contracting of a debt, and plaintiffs' remedy, if any, would be an action in form ex delicto.

On December 11, 1888, said defendant moved for the quashing of the warrant, and for his discharge, for the following additional reasons:

1. That the suit brought by the plaintiffs is an action of trespass to recover damages for the fraudulent conversion of pig iron to defendants' use.

2. The suit is brought and affidavits filed stating the title of the plaintiff as Wm. R. Hart & Co., and it is not disclosed whether the plaintiff is a corporation or a copartnership.

Thereupon the plaintiffs moved the court for leave to amend by changing the form of their action from trespass to assumpsit. No order was made upon this motion.

After a hearing in the proceeding under the warrant of arrest, at which a large amount of testimony was taken upon the issue of fraud raised by the affidavits, and after argument, SIMONTON, P. J., on December 31, 1888, filed the following opinion:

Counsel for defendants contend that the warrant of arrest must be quashed because the action upon which the proceedings are based is in form an action ex delicto.

It has been repeatedly held that the right to a warrant of arrest, provided for by the act of 1842, does not depend upon the form of the action brought before applying for the warrant and referred to in the affidavit. In Bowen v. Burdick, 3 Clark 113, it is said by SHARSWOOD, J.: "It is the settled law of Pennsylvania that the election of the plaintiff in cases of this character, to proceed in an action in form ex delicto, shall not deprive the defendant of any substantial privilege or defence;" and that "the act of assembly meant that the privilege from arrest or imprisonment, upon the mere ex parte affidavit of the plaintiff, or other person for him, should exist in all cases arising from contract, express or implied; . . . . . that the election of the plaintiff of his form of action shall not deprive the defendant of the privilege thus secured to him by the law."

In Bager v. Radley, 1 Phila. 47, it was said by the same

learned judge, that "since the act of 12th of July, 1842, an action in form ex delicto cannot be commenced by a writ of capias for a debt contracted fraudulently;" and further, "that wherever the foundation of the action is the contract between the parties, the proper course is to obtain redress by the warrant of arrest provided by the third section of the act of July 12, 1842." And in Gallagher v. Norcross, 7 Phila. 623, Mr. Justice AGNEW held, that where the debt was fraudulently contracted, the plaintiff is not entitled to a capias ad respondendum, but that "the case falls within the non-imprisonment law of 1842, forbidding the arrest under the original process, and authorizing the defendant to be held only under the warrant of a judge."

In Philadelphia Coal Co. v. Huntzinger, 6 W. N. 300, it is said that the right of a defendant to exemption from arrest on a capias "is a privilege guaranteed to him by the act of 1842. It is a substantial privilege, for by it the question of his arrest and the sufficiency of the plaintiff's affidavit are referred to the determination of a judge, instead of the will of the plaintiff. He cannot be deprived of this privilege by any circumstance so trivial as that which may determine the form of action which the plaintiff may elect to bring. Whenever the foundation of the action is a contract, and the defendant is charged with a fraudulent contract, either in the inception of it or the execution of it, the case is within the provisions of the act of 1842, without reference to the form of action adopted."

We have therefore no doubt that the defendant in this case may be held on the warrant of arrest, if the facts justify it, without regard to the form of the action commenced by the plaintiffs. The condition with respect to the nature of the claim imposed by the act is, that the warrant of arrest shall not be granted unless the court or judge, to whom the application is made, be satisfied that the defendant could not be arrested upon capias, because of the demand upon which the action is founded. We are clearly satisfied that he could not be so arrested in this case. On a warrant of arrest "the proceeding is not at all a criminal one. The fraud is treated as a private injury, giving rise to a corresponding modification of the ordinary private remedy applicable to debts. If the debt be fraudulently contracted, or if it be fraudulently attempted

to be evaded, this special remedy may be applied, whether the fraud be committed in or out of the state; just as we allow actions of tort without question of the place where the wrong was done."

A careful consideration of all the evidence brings us to the conclusion that the debt in this case was fraudulently contracted, and if so, it brings the case within the provisions of the act of 1842. Fraud is not to be presumed, but it may, and often must, be proved by circumstances. The defendant contends that he did not know the terms of the contract under which the iron in question was purchased. The evidence clearly establishes that he was not purchasing iron in any other way than by cash order shipment purchases, at or about the time this transaction occurred, except in one instance, in which it was purchased on thirty days' credit. There is no evidence whatever that any cash purchases were made other than those in which the iron was not to be delivered until after payment. Defendant had notice, several days before the shipment of the first car, that the purchase had been made, and there was nothing in the notice to lead him to suppose that the purchase was made on other than the usual terms, nor did he testify, when upon the stand, that he believed it was so made. He also claims that he did not know the iron was taken until after it was used. The whole evidence shows that he must have known it before the second lot arrived, and his concealment of the fact for nearly two months, from the plaintiffs' agent, that the iron had been used, and his evident reluctance, when upon the stand, to state candidly and clearly the whole truth of the case, lead us to the conclusion that he knowingly committed the fraud. If, by mistake, a car load of iron had been taken and used by an honest man, who had no design or intention to commit a fraud, the plain course for him to pursue would be, as soon as the mistake was discovered, to notify the owner and make restitution. Instead of this, the defendant, who must, if he had not known it at the time, have discovered the mistake before the second load was taken, concealed the facts from the owners, made no restitution, refused to pay for the iron, and, on the hearing, set up the improbable excuse and defence that he did not know the terms upon which the iron was purchased, when, from the nature of things and from the letters produced in evidence, he must have known it.

Without enlarging further, we conclude by finding that the claim in this case is one for which the defendant could not be arrested on a capias ad respondendum, since the passage of the act of 1842, and that the debt upon which the claim is founded was fraudulently contracted by the defendant, and, therefore, that a warrant of arrest [commitment?] must issue. .

A commitment signed by John W. SIMONTON, President Judge, was then issued to the sheriff, whereupon the defendant Cooper presented his petition to the Supreme Court for the special allowance of a writ of certiorari to said president judge. Said writ having been duly allowed, issued and returned, the defendant filed assignments of error, specifying that the judge erred :

1. In issuing the warrant of arrest.
2. In not quashing the warrant of arrest issued.
3. In committing the defendant to jail.

. *Mr. Edwin W. Jackson* (with him *Mr. E. G. Butler*), for the appellant :

1. Under the act of July 12, 1842, the warrant of arrest cannot be sustained unless it appears to be properly alleged upon the face of the record, (1) that the suit of the plaintiffs is brought upon a contract express or implied, and therefore (2) no suit could have been commenced by capias, and (3) that the defendants fraudulently contracted the debt or obligation respecting which the suit was brought.

2. The foundation of the action in this case is a tort, not a contract. The suit brought is an action of trespass to recover damages " for the fraudulent and wrongful conversion by the defendants of the pig iron." The affidavits on which the warrant of arrest was granted allege the same conversion. True, a contract is alleged by way of inducement, in the plaintiff's statement of claim filed in said action, and also in the affidavits. But the cause of action set forth is clearly not upon a contract.

3. That the case alleged by the plaintiffs would justify the commencement of an action by capias, is plain from authority : Hopper v. Williams, 2 Clark 448 ; Suydam v. Smith, 7 Hill 182 ; McDuffie v. Beddoe, 7 Hill 578. The case of Bowen v. Burdick,

3 Clark 113, cited by the judge below, follows and relies on Brown v. Treat, 1 Hill 225, and the latter case is explained and limited in Suydam v. Smith, and disapproved in McDuffie v. Beddoe. In all the cases cited by the judge, the question was one of liability to be arrested and held to bail on a capias ad respondendum.

4. No action within the meaning of the act of 1842 could be founded upon the alleged taking and conversion of the iron. That act is an almost literal copy of the New York act of 1831, known as the Stilwell act. The meaning of the term "contract," as used in that act, has been settled in People v. Speir, 57 How. Pr. 274, as excluding implied promises to restore property wrongfully taken. See also McGovern v. Payn, 32 Barb. 83. That the construction given to the act in People v. Speir, is correct, is plain from the opinion in the leading case of Gosline v. Place, 32 Pa. 520.

5. The motion made by the plaintiffs for leave to change the form of action to assumpsit is undisposed of. But if it had been granted, it would not have saved their case, for the warrant of arrest was then out of court and it must stand or fall upon the record as already made up : Scully v. Kirkpatrick, 79 Pa. 324. If the plaintiffs' cause of action be founded upon a contract, they cannot recover on it in trespass, which is an action ex delicto, both at common law and under the act of May 25, 1887, P. L. 271. And if they cannot recover in the form of action instituted, they have no right to the remedy under the act of 1842.

6. If the action were assumpsit upon the contract for the purchase of the pig iron, the plaintiffs would not be entitled to the warrant of arrest. It is not alleged that Cooper or either of the defendants personally contracted the debt. But the fraud that will move the judge under the act of 1842 is the personal fraud of the party charged, not that of a copartner : Bassett v. Davis, 1 Clark 310 ; Wetmore v. Earle, 9 Abb. Pr. 58 ; Hanover Co. v. Sheldon, 9 Abb. Pr. 240 ; nor that of an agent : Claflin v. Frank, 8 Abb. Pr. 412.

7. Again it is not alleged that there was any fraud, on the part of any one, in the original contracting of the debt. The only fraud alleged by the plaintiffs, or found by the judge, is the taking and converting the pig iron in fraud of the rights of the plaintiffs. But the very words of the act require that there

must have been fraud in contracting the debt, meaning some fraudulent conduct at the time of the contract: Hamill v. Rawlston, 9 Phila. 52; Heffner v. Kantner, 1 Leg. Chr. Rep. 162; Vankirk v. Staats, 24 N. J. L. 121.

*Mr. M. E. Olmsted* (with him *Mr. Robert Snodgrass*), for the appellees:

1. If there be no technical error upon the face of the proceedings which properly constitute the record brought up by the certiorari, the action of the judge must be affirmed. It is important, then, to determine what part of the papers and proceedings making up the record of the suit, is included within the record which the certiorari brings here. We submit that, since the proceeding under the warrant of arrest is collateral and auxiliary to the suit, nothing belongs to the record except what is pertinent to and directly connected with the collateral proceeding.

2. The affidavits upon which the warrant of arrest was issued fully meet the requirements of the statute. They distinctly aver the pendency of a suit; that there is a debt or demand due from the defendants, and that this debt or money claim was fraudulently contracted, giving the facts and circumstances. They thus go even beyond the rule laid down in Gosline v. Place, 32 Pa. 520, and Berger v. Smull, 39 Pa. 302. There was therefore no error in issuing the warrant, since, if the affidavits made out a case of probable cause, the requirements of the statute were fully answered.

3. The findings of fact upon which the order of commitment was based cannot be reviewed. The assignment of error as to the commitment must stand or fall by a simple inspection of the record. We contend that this is regular in all essential particulars. It shows that after hearing the judge was satisfied that the demand of the plaintiffs was a contract, and that the allegations of the plaintiff were substantiated, in that the defendants "fraudulently contracted the debt respecting which the suit is brought," which was held sufficient in Gosline v. Place, 32 Pa. 520. These express findings preclude any question as to the meaning of the term "contract," or as to what is or is not stated in the affidavits.

4. It may be that the form of the action brought was a tech-

nical mistake, but the judge found as a fact that the demand sued for had its inception in contract, and, if a mistake, the form of action was clearly amendable under the act of May 10, 1871, P. L. 265. The right to a warrant of arrest under the act of 1842, does not, however, depend upon the form of the action, as the opinion of the learned judge conclusively shows. The statute does not specify any particular form of suit. Moreover, the proceedings on the warrant are no part of the proceedings in the action: Scully v. Kirkpatrick, 79 Pa. 324, and this court cannot regard them. Hence the form of the action can have nothing to do with the regularity of the proceedings under review.

OPINION, MR. CHIEF JUSTICE PAXSON:

We are asked upon this writ of certiorari to review the proceedings of a warrant of arrest under the act of 1842. It is clear we cannot do so upon the merits. The certiorari brings up nothing but the record, of which the proceedings subsequent to the warrant form no part. There is no provision in the act of 1842 that the proceedings, or any part of them, shall be filed of record. It follows that if the affidavit was sufficient to justify the warrant, the action of the court below must stand.

The affidavit of George T. Barnes, one of the plaintiffs below, upon which the proceeding was based, contains near the close thereof the general averment that " the said George P. Cooper and Charles H. Reynolds, doing business under the name and style of Cooper, Reynolds & Co., have fraudulently incurred the debt or obligation for which the above entitled suit is brought, within the meaning of the act of July 12, 1842." Had the plaintiffs rested upon this general averment, their case would have been stronger than it is as now presented, for, when they proceed to set forth the facts upon which the charge that the debt was fraudulently contracted is founded, it appears that said charge was a mere conclusion of law from facts insufficient to support it. We think it conclusively appears that the fraud was not in the original contract—the order for the iron—but in its subsequent breach after the iron had been shipped by the plaintiffs to W. S. Pilling, in care of the defendants at their rolling-mill, near Harrisburg. Granted that the defendants had no right to use the iron until paid for, yet their

use of it was but a subsequent breach of their original contract; and, while such breach might have involved a fraud, it by no means follows that the original contract was tainted with the fraud; in other words, that the debt was fraudulently contracted. There may be many instances in which the breach of a contract is a fraud, or at least partakes of the nature of a fraud. There is no averment in the affidavit to connect the subsequent fraud with the original contract. Had there been such averment, that the fraud was contemplated and intended when the order for the iron was given, the case would have presented a different aspect and raised quite another question. As it stands, there is nothing upon the record—and we look no further—to support the allegation that the debt was fraudulently contracted.

          The proceedings are reversed.

---

(xx)

