## BAC Corporation v. Shore, etc.

*White & Staples*, for plaintiff.
*Illoway & Fischer*, for defendant.

WINNET, J., June 8, 1943.— . . . .

Two main issues are involved in this suit. The first is whether or not defendant, William Shore, is obligated to plaintiff; and, second, whether or not the debt, or any part of it, was fraudulently contracted.

The suit was started in assumpsit, and subsequently, upon an affidavit made by plaintiff, under the Act of July 12, 1842, P. L. 339, 12 PS §§257 et seq., alleging the fraudulent contraction of the debt, warrant of arrest against the defendant issued. Defendant entered bail and the case proceeded to trial without a jury.

The dealings between the parties started about July 1, 1941, when a financial statement was given to plaintiff by William Shore. In that statement the trade name of the concern is listed as Shore Electrical Service. It is signed by William Shore. Thereafter plaintiff dealt with William Shore on every phase of the many transactions between them. All contracts, assignments, and checks were always signed by William Shore. The Shore Electrical Service was in the installment furniture business and had arranged to finance its sales with plaintiff. The business itself was apparently registered in the name of Elizabeth Shore. Plaintiff knew only William Shore, and whatever liability there exists is his. If Elizabeth Shore is an undisclosed principal plaintiff can hold William Shore, the agent, liable: Descalzi et al. v. North American Fruit Exchange, 96 Pa. Superior Ct. 293; A. L. I. Restatement of Agency, §323.

A registration under the Fictitious Names Act of June 28, 1917, P. L. 645, is not of itself a disclosure of the principal of the business. A person is not required before entering into a contract to make a search of records to determine who are the registered princi-

pals. The Fictitious Names Act is "a penal regulation and should be so construed as not to extend its operations beyond the purposes for which it was evidently enacted": Engle v. Capital Fire Insurance Co., 75 Pa. Superior Ct. 390, 397.

Having determined that defendant is liable, the next question is whether the debt was fraudulently contracted. There is no real dispute as to the amount due. Plaintiff is urging a fraud finding, so that supplementary proceedings under the Act of July 12, 1842, may be taken after judgment.

The dealings between the parties involve eight leases. It is clear that to entitle plaintiff to proceed further under the Act of July 12, 1842, there must be a finding that the debt was fraudulently contracted. Fraudulent conduct subsequent to the contraction of the debt cannot avail a creditor proceeding under this act. In Wm. R. Hart & Co. v. Cooper et al., 129 Pa. 297, it has been held that if the contract creating a debt is free from fraud at the time it is made a subsequent fraudulent breach of its conditions by the debtor will not convert the indebtedness arising from it into a debt fraudulently contracted within the meaning of that term as it is used in section 3 of the act. In those of the transactions, therefore, in which plaintiff paid consideration for the assignment of bailment leases which misrepresented the facts there was fraud in the inception of the debt.

In the Magee lease at the time of the assignment defendant represented that a $20 down payment had been made before the delivery of the Bendix washing machine. This was untrue and false.

In the Sharek transaction, at the time of the assignment and the creation of the debt there was a representation that a $30 payment had been made before the delivery of the ten-piece dining-room suite. This was untrue and false.

In the Moyer transaction it was represented that $37 had been paid on or before the delivery of a nine-piece bedroom suite. This also was untrue and false. There was neither the payment nor the merchandise delivery as warranted, and on which plaintiff relied before making the advances to defendant.

The plea of defendant is that he always intended to make delivery of the various items, and in some instances he actually collected the down payments subsequently. This is the same plea of a bank teller who takes money from the till—he always intended to replace it—and sometimes he does. The law cannot condone dishonest and fraudulent acts by pleas of honest intention. Defendant knew that the representations he was making to plaintiff at the time of the assignment and at the time he obtained money from plaintiff were false. The debt he contracted at that moment was fraudulent.

The same can be said of the Swanki and Kelly leases. In both instances he made representations that certain down payments were made. These were untrue and false. Defendant's excuse is that that these representations were made to comply with a Federal reserve bank regulation, and defendant knew it was customary not to collect it upon the signing of the agreement. A custom can neither warrant nor excuse fraud. At most it may negative reliance on the representation. I do not find, however, any custom in this case which would warrant the conduct of defendant. When plaintiff lent money on the basis of the false representations contained in the leases assigned the debt was fraudulently contracted within the meaning of the Act of July 12, 1842, P. L. 339.

Plaintiff is, therefore, entitled to a finding of $931.61 for the balance due under the various transactions with defendant. It is also entitled to a finding that $625.70 of this amount was fraudulently contracted,

so that should plaintiff so desire execution may proceed in accordance with the provisions of the Act of July 12, 1842. . . .