## Engle *v.* Capital Fire Insurance Company of Concord, New Hampshire, Appellant.

*Insurance—Fire insurance—Ownership of property insured.*

In an action of assumpsit on an insurance policy, it appeared that the policy of insurance was made to an individual owner, and the defense was advanced that the insured property was jointly owned by the insured and his brother and that the latter had been convicted of arson, in burning the building in which the property was contained. Evidence in support of this allegation was produced that the brother had had charge of the financial part of the business, had kept the books and often deposited money in his own name. This evidence was contradicted by the plaintiff, who claimed that the property belonged to him as an individual. Under such circumstances the case was for the jury, to determine to whom the business and the property insured really belonged.

*Act of June 28, 1917, P. L. 645—Noncompliance with act—Effect on insurance policy.*

The failure of an owner of a business, conducted under a fictitious name, to register the name, as required by the Act of June 28, 1917, P. L. 645, does not invalidate a fire insurance policy in his favor upon property used in the business.

*Practice, C. P.—Order of trial—Cross-examination.*

Where a witness has already been called for examination twice and has been cross-examined at length, an objection to a further examination, which was sustained by the court, is not ground for reversal. This was a matter for the discretion of the court, and where ample opportunity had been afforded to examine the witness there is no reason to believe that the discretion was abused in refusing to permit further examination. This is more especially the case where the matter proposed to be proved was irrelevant to the issue.

Argued October 13, 1920. Appeal, No. 58, Oct. T., 1920, by defendant, from judgment of Municipal Court of Philadelphia, Jan. T., 1919, No. 477, on verdict for plaintiff in the case of Joseph Engle, trading as Enrose Knitting Mills and Daisy Manufacturing Company v. Capital Fire Insurance Company of Concord, New Hampshire. Before ORLADY, P. J., HENDERSON, TREXLER, KELLER and LINN, JJ. Affirmed.

Assumpsit on insurance policy.

The facts are stated in the opinion of the Superior Court.

Verdict for plaintiff for $500 and judgment thereon. Defendant appealed.

*Errors assigned* were various rulings on evidence, the charge of the court, answers to points and refusal to direct a verdict for the defendant.

*Horace Michener Schell,* and with him *Franklin E. Barr* and *A. L. Moise,* for appellant.—The failure of the plaintiff to comply with the Act of June 28, 1917, P. L. 645, is a bar to his recovery: Mitchell v. Smith, 1 Binney

110; Holt v. Green, 73 Pa. 198; Venango County v. Penn Bridge Co., 215 Pa. 199; Vendegrift v. Vandegrift, 226 Pa. 254; Blandi v. Pellegrini, 60 Pa. Superior Ct. 552; Sykes v. Pa. R. R. Co., 28 D. R. 1038; Donahue v. Mellinger, 29 D. R. 346.

*B. I. DeYoung,* for appellee.—The question of the ownership of the property was properly submitted to the jury: Swingle v. Sun Insurance Office, 33 Pa. Superior Ct. 261; Pittsburgh Insurance Co. v. Frazee, 107 Pa. 521; Silverman v. Safety Mutual Fire Insurance Company, 44 Pa. Superior Ct. 618.

The failure to register under the Act of June 28, 1917, P. L. 645, did not deprive the plaintiff of his right to recover on the insurance policy: Black v. New York Life Insurance Co., 127 N. Y. S. 409; Loeb v. Firemen's Insurance Company of Baltimore, 77 N. Y. S. 106; Sinnott v. German Bank, 164 New York 386; Doyle v. Shuttleworth, 83 N. Y. S. 609; Segal v. Flyer, 80 Connecticut 293; Duroth Manufacturing Co. v. Cauffiel, 243 Pa. 24; New York & Scranton Con. Co. v. Winton, 208 Pa. 467; Leasure v. Union Mutual Life Insurance Co., 91 Pa. 491; King Optical Co. v. Royal Ins. Co., 24 Pa. Superior Ct. 527; Grant v. Henry Clay Coal Co., 80 Pa. 208; Federal Glass Co. v. Lorentz, 49 Pa. Superior Ct. 585.

OPINION BY HENDERSON, J., March 5, 1921:

The plaintiff's action was based on a policy of insurance issued by the defendant, covering machinery and a stock of goods on the sixth floor of a building in the City of Philadelphia. The policy was in the name of Joseph Engle, trading as En Rose Knitting Mills and Daisy Mfg. Co. It contained the usual unconditional ownership clause. Two principal defenses were presented at the trial: First, that a brother of the plaintiff was interested with the plaintiff in the business; and secondly, that it was conducted under an assumed or fictitious name—En Rose Knitting Mills and Daisy Mfg. Co.—

without certificates having been filed in the offices of the secretary of the Commonwealth and the prothonotary of Philadelphia County, setting forth the real name of the person or persons owning or interested in the business and also the name, style or designation under which the business was being or to be conducted, in violation of the requirements of the Act of June 28, 1917. Objection was also made to the admission and rejection of evidence during the progress of the trial. It appears from the evidence that a brother, Louis Engle, was employed in the factory at the date of the fire and had been so employed during the time the business was carried on in the place where the fire occurred. His relation to the business was that of bookkeeper and manager of the finances; the plaintiff giving his attention to the operation of the factory. The business consisted of the manufacture of ladies' waists and school bags and involved the use of machinery and the raw material requisite for the production of the output of the factory. It was shown that much of the business in the payment of bills and the deposit of money was done by Louis Engle in his own name with the knowledge of the plaintiff. Some contradictions and inconsistencies of the testimony of the plaintiff and Louis Engle are pointed out and relied on by the appellant to support the proposition that the court should have given binding instructions for the defendant because the latter was interested in the business. It was also shown that Louis Engle was indicted and convicted for arson in setting the building on fire which fact in connection with the evidence relating to the manner in which the business was conducted, the appellant's counsel contends was sufficient to require the court to give binding instructions for the defendant. It is said in the language of the learned counsel that: "The statements made by the Engles will not bear the acid tests, as they are palpably untrue." The plaintiff and Louis Engle both testified that the plaintiff was the sole owner of the property and that Louis had no inter-

est therein except as a hired employee. The contract was made directly with the plaintiff, and his right to maintain the action must be recognized unless the alleged contradictions and inconsistencies relied on by the defendant are sufficient to warrant the court in holding that the evidence in support of the action is incredible and therefore to be disregarded. We have examined the evidence with reference to this contention, but are not able to reach the conclusion at which the counsel seem to have arrived. Starting out with the proposition that the defendant was given to understand at the time the contract was entered into that the property belonged to the plaintiff and that he and the only other person who is said to be interested deny that the latter had any ownership therein, something more would have to be shown than that the financial operations of the concern were principally conducted by Louis Engle, and a considerable part thereof in his own name to warrant the court in holding there was no question of fact for the consideration of the jury. It is a reasonable assumption from the evidence that the plaintiff was a practical manufacturer, that he had experience in the operating of machines and the manipulating of the material used in the factory. His brother was familiar with accounts and the bookkeeping involved in the business. It was not unreasonable nor unusual that there should be the division of labor which the plaintiff's evidence shows to have existed. Explanations were given as to the reasons why deposits were made in the name of Louis and why checks were drawn in his name. It was said to be convenient and was the manner they had adopted. The court could not say that this explanation is not true nor deny to the plaintiff the right to have his funds deposited in the name of his brother or any other manner satisfactory to himself. Even if it were made to appear that the brother was interested in the fund deposited, it could not be declared as a matter of law that this fact overcame the statements of both of the witness-

es that the property insured belonged wholly to the
plaintiff. The jury would be charged with the responsi-
bility of determining the credit to be given to the wit-
nesses and the weight to be attached to the fact of the
depositing and checking out of money in the manner de-
scribed. The evidence for the defense on this subject
has much less weight than was offered in Pittsburgh
Insurance Company v. Frazee, 107 Pa. 527. There the
policy was issued to James Frazee. He had purchased
the stock of goods from his brother, Charles F. Frazee,
and his brother, Jasper, had no interest in it, but was
employed merely to conduct the business, receiving for
his services one-half of the profits realized less one-half
of the loss from bad debts. Jasper testified to the same
state of facts. On the other hand the books of the busi-
ness were opened in the name of J. Frazee & Brother;
the sign set up in front of their place of business was in
the same form, and the proofs of loss first sent in stated
that the goods were jointly owned by Jonas and Jasper
Frazee. This was clearly an inconsistent state of facts
on the face of it. The contradictions were explained to
some extent, however, and it was held that the question
of ownership was plainly one for the jury. Of like im-
port is Swingle v. Sun Insurance Office, 33 Pa. Superior
Ct. 261, where the same subject is considered. No
question of the rights of innocent third parties or of
creditors arises. Whatever the appearance of things
may have been, therefore, as to a partnership or joint
interest, the question was not one of appearance, but of
fact, and the jury must ascertain from all of the com-
petent evidence what the facts are. It is to be observed,
too, that much of the evidence of Louis Engle supported
the appellant's claim. He was called by the defendant
and while it is true he was the brother of the plaintiff
and was convicted of the arson out of which the plain-
tiff's loss arose, the plaintiff's case is not to be defeated
by supposed inconsistencies in the testimony of the de-
fendant's witness. He was not a party to the action and

is not shown to have been in any wise interested in the result of it, and however unfavorable his testimony may have been to the party calling him, the supposed improbabilities in his testimony are not to be treated as defects in the case as made out by the plaintiff.

The second question arises under the Act of June 28, 1917, P. L. 645. This statute provides that "no individual or individuals shall thereafter carry on or conduct any business in this Commonwealth under any assumed or fictitious name, style or designation, unless the person or persons conducting or carrying on the same shall have first filed in the office of the secretary of the Commonwealth and in the office of the prothonotary......a certificate under oath and signed by such person or persons, setting forth the real name or names and addresses of all persons owning or interested in said business and also the name, style or designation under which said business is being or will be carried on or conducted." The third section makes the carrying on or conducting of business in violation of the act a misdemeanor. The appellant seeks to avoid its obligation on the ground that it is in violation of the provisions of the statute in that the plaintiff was carrying on a business under an assumed or fictitious name, to wit: En Rose Knitting Mills and Daisy Mfg. Co. It will be noticed, as has been observed, that the policy was not issued to a party having a fictitious name. It was given directly to the plaintiff. True, he describes the name under which his business is carried on, but it cannot be correctly said to be an obligation to the Knitting Mills and Daisy Mfg. Co. That is merely descriptive of the business of the person who is taking out the policy. The contract is on its face, therefore, binding on the defendant. The burden is on it to show that it violates the statute, for there is no public policy which makes it unlawful for a person or partnership to adopt a name descriptive of the business carried on. The question is, whether the taking out of a policy of insurance on personal property

used in a manufacturing plant is the carrying on or conducting of a business. The purpose of the statute is obvious. It was intended to protect persons giving credit in reliance on the assumed or fictitious name and to definitely establish the identity of the individuals owning the business for the information of those who might have dealings with the concern It was not intended to produce a confiscation of property, nor to relieve debtors from their honest obligations. It, of course, applied to the plaintiff so far as he carried on business in the name assumed. What was that business? Evidently the manufacture and sale of certain articles of merchandise. It was a business carried on in a factory. It involved the purchase of machinery and of materials for manufacture and the sale thereof. Whatever was done in this manufacturing enterprise might fairly be regarded as business carried on under the assumed or fictitious name. To conduct or carry on a business implies work done through a period of time—a continuing activity. Acts not necessarily or fairly within the scope of this continuing business ought not to be brought within the purview of the statute. It is a penal regulation and should be so construed as not to extend its operations beyond the purposes for which it was evidently enacted. That the taking out of a policy of insurance on property devoted to a manufacturing business is not within the terms of the statute, we think is a reasonable conclusion, particularly so when the fictitious name was not used in the policy. If the plaintiff had been the owner of the building in which the business was carried on and had insured it in his own name, it could not be successfully contended that this transaction had any relation to the work carried on in the building as affected by the statute in question. The act would not deprive the owner of an action at law to recover his property if wrongfully taken from him, or the value thereof if it had been destroyed by a trespasser: Duroth Mfg. Co. v. Cauffiel, 243 Pa. 24. The

assertion of a right under such circumstances, having no logical relation to the mischief legislated against, is not incompatible with the prohibition of the statute. The plaintiff superintended and directed the operation of his business. It required his presence from day to day. He must live somewhere in order to give it the proper supervision. It would hardly be contended that if he should contract for the purchase of a dwelling house or the leasing thereof to enable him the more effectively to attend to his manufacturing business such contract was forbidden because of the fictitious name in which that business was prosecuted. No more do we regard a contract of indemnity against loss by fire with respect to the property used in the business as a part of the conducting or carrying on of business. It has been seen that the defendant did not deal with the plaintiff relying on the fictitious name, nor can it be said that the enforcement of the contract in suit is an assertion of his right to do business under such name. As respects the obligation of the defendant, it is a matter of no consequence whether the plaintiff's factory was in operation or not. It was not insuring the business nor concerned in its actual prosecution. A statute in New York provided that no person should transact business in the name of a partner not interested in his firm, and when the designation "& Co. is used, it shall represent an actual partner or partners." A subsequent act made it a misdemeanor so to do. In construing this act, it was held in Gay v. Seibold, 97 N. Y. 472, that a violation of the act could not be predicated of any action in which the false designation was not used; and in Sinnott v. German Bank, 164 N. Y. 386, an action to avoid a sale made to a person doing business in a name to which the designation "& Co." was added, the court held that the statute was to be strictly construed; the express penalties for violation of the act are severe and forfeitures ought not to be implied which are not plainly within the spirit of the statute.

Complaint is made in the first assignment that the court permitted the plaintiff to testify as to the value of certain machines destroyed. This objection is not sustained. The witness testified that he was an expert machinist; that he had worked on the machines in question; that he had been in the machinery business for twenty years buying and selling machines; that he had handled about fifty of these particular machines; and that he had knowledge of their market value as new and secondhand machines. He also testified with respect to the annual depreciation in value from use. The court deemed him a qualified witness, and we think this conclusion was correct. The testimony relating to the value of the machines at the time of the fire was competent under all of the evidence of the plaintiff on that subject and the second assignment must be dismissed. No exception was taken to support the third assignment, and irrespective of that, we think it is without merit. The offer was competent in the light of other evidence in the case.

During the progress of the trial the plaintiff was recalled for cross-examination. Objection was made to such recalling and the objection sustained on the ground that the witness had been twice on the stand before, and had been cross-examined at length. This was the exercise of discretion of the court clearly within its power: Com. v. Eisenhower, 181 Pa. 470. The evidence was voluminous, ample opportunity was afforded to cross-examine the witness and nothing suggested in the argument leads us to think this discretion was abused. Moreover, the thing proposed to be proved was irrelevant. The offer had no bearing on the value of the property and did not legitimately tend to show that the fire was caused by the plaintiff.

The court was not in error in refusing the defendant's third point. Its conclusion is a non sequitur. The defendant failed to show that the plaintiff was in any way connected with the burning of the factory, or that he

derived any .advantage therefrom. The jury has so found. He did not forfeit his right to the protection of the policy because his brother was convicted of having started the fire. The jury was instructed in clear language that if Louis Engle had any interest in the assets of the En Rose Company the verdict should be for the defendant. If he was in no way interested therein and there was no evidence of collusion between him and the plaintiff, the latter is not prevented from maintaining his action because the fire was feloniously started.

The assignments are dismissed and the judgment affirmed.