## Rowland *v.* Canuso et al., Appellants.

Argued November 26, 1937. Before SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Raymond A. White, Jr.,* for appellants in No. 204.

*F. C. Thomas, Jr.,* with him *Roy Martin Boyd,* for appellant in No. 207.

*Charles J. Biddle,* for appellee in Nos. 204 and 207.

OPINION BY MR. JUSTICE MAXEY, January 31, 1938:

Appellee's husband, William C. Rowland, Jr., received fatal injuries when the automobile he was driving collided with the metal operator's platform which projected from the sides of appellants' concrete mixer parked in a city street. She instituted a suit and recovered a verdict for his death arising from the alleged negligence of defendants, and from the judgment entered thereon defendants appealed. In their behalf it is claimed that the deceased was guilty of contributory

negligence and that no evidence of their negligence was shown.

The accident occurred early in the morning on July 20, 1934. Rowland was returning to his home alone, in a borrowed car, from a dinner party he had attended. He was proceeding north on Frankford Avenue, in Philadelphia, a street 64 feet wide from curb to curb. Double trolley tracks occupied the center of the street, leaving a space of about 24½ feet on each side between the outermost rail and the curb. Appellants had for some time been conducting paving operations on Frankford Avenue, south of the point of collision, using a large concrete mixer which was something over 8 feet in width. As operations progressed north on Frankford Avenue the mixer followed, until on the night of the accident it was left parked alongside the east trolley track, at a distance of two feet from the track and between it and the curb, a short distance south of the point where Hartel Street enters from the east. The deceased attempted to drive his car between the mixer, on his left, and the curb, on his right. In doing so he sideswiped a projecting shelf or platform, on which the operator of the machine stood, which protruded some two feet from the side of the concrete mixer at the height of about three feet above the ground. This platform was only an inch or so thick and was supported by brackets beneath it and attached to the body of the mixer. Appellee's evidence was to the effect that the automobile was proceeding at between 25 and 27 miles an hour and stopped within a few feet after striking the platform; and that the only contact made with the body of the mixer was after the first instant of the collision, when the car was deflected to the left and came to rest against the mixer. The only street lights in the vicinity were on the other side of Frankford Avenue at a distance of perhaps 100 feet, so that the jutting portion of the mixer with which the car collided was thrown into shadow, as were the supports on which the shelf or platform rested.

The negligence averred, and the basis of appellee's case, was the failure of appellants to light the concrete mixer properly, so as to prevent its being a hazard in the public highway at the time. Appellants charge that notwithstanding the defective lighting of the mixer, the deceased should have observed it in time to avoid the collision. Appellee's only eyewitness, the driver of a milk truck which was following close behind the car driven by the deceased, testified there were three or four lighted red lanterns on the mixer at the time, one on the end of the "boom" which pointed in the direction from which Rowland was driving, and three on the body of the mixer. There was also a lamp on the step or platform which Rowland's car struck, he said, but it was not lighted and had no globe or glass shade; immediately after the accident, as he ran up to assist Rowland from the car, he felt the wick of the lamp and found it cold. There was no shattered glass scattered around it to indicate the lamp had been extinguished and broken by the force of the impact.

The fact of there being no light, as indicated, if believed by the jury, as apparently it was, supported the charge of appellants' negligence. It is of no moment that the evidence submitted by appellants was contradictory. Its credibility and weight were for the jury, and the latter was entitled to find that appellants had properly placed lights on the body of the mixer itself, but failed to light the platform which projected into the path of Rowland's oncoming car. The hazard thus created was even more dangerous in character than if no lights at all had been placed on the mixer. As Rowland approached the machine, his attention was centered on the mass of the object blocking the highway, the broad outlines of which were disclosed by the assemblage of lights strung about it. He sought to pass to the right, where he believed an unobstructed passage of approximately 10 feet in width lay open, between the mixer and the curb. Had the unlighted platform not been there,

this way would have been open and the collision would not have occurred. The situation as it appeared to him invited the action he took and this action unfortunately resulted in his fatal injury. As it would have been negligent for appellants to leave the mixer unlighted altogether, so it was negligence to leave the dangerous projection concealed in darkness. In this aspect the case resembles the situation in *Clamper v. Phila.,* 279 Pa. 385, 124 A. 132, where the city marked a small depression in the street with a red light but failed to light in any way a rope stretched across the cartway from curb to curb a few feet above the ground. Plaintiff, avoiding the danger spot, drove his taxicab into the rope and suffered injuries for which we allowed recovery. Justice FRAZER said, at page 387: "Under the circumstances established by the testimony, however, it was clearly for the jury to say whether the placing of the rope across the street with its location unmarked, except by a single red light located along one side of the street near the curb and at a distance of twenty-five feet beyond the rope, was sufficient performance of duty on the part of the city to give travelers reasonable notice of the presence of the obstruction. One driving along the street in question would be justified in concluding the danger point was confined to the immediate location of the red light near the curb and that the remainder of the street was passable."

To fortify this conclusion in the present case, it is necessary to note the testimony of only one other witness, a police officer stationed in the vicinity who, although he did not see the collision, heard the impact of it and hurried to the scene. As he was helping Rowland, who was conscious, from the car, the latter asked the officer what he had struck, and, on being told that it was a concrete mixer, replied: "No, I passed that," and stated he had seen no light on the projecting step. This furnishes additional proof that inadequate lighting of the obstruction was the proximate cause of the accident.

To the charge of Rowland's contributory negligence, it is sufficient to say that the unlighted step or platform was not so substantial an object, under the conditions indicated by appellee's evidence, that Rowland's failure to see it and then to take appropriate action convicts him of negligence as a matter of law. The applicable provision of the Motor Vehicle Code in force at the time of the accident (Act of May 1, 1929, P. L. 905, sec. 803; 75 PS sec. 353) required only that his headlights be of sufficient strength "to render clearly discernible all vehicles, persons or substantial objects" within the specified distance ahead. From the evidence the jury was entitled to find that the projecting platform did not fall within this category and was not clearly discernible in the darkness under any conditions of lighting. This view of the case distinguishes it from *Stewart v. P. R. T. Co.*, 103 Pa. Super. Ct. 366, 157 A. 37, where plaintiff failed to observe, and drove his car into, a plainly visible light standard stationed in a street. Rowland's speed appears to have been moderate, and but for the platform his clearance of the mixer itself would have been adequate. He was not required to allow any particular distance between his automobile and the mixer as he attempted to pass between it and the curb. The platform itself, the evidence showed, was visible in the beams of an automobile's headlights only for a distance of some 25 or 30 feet, whereas the mixer itself could be seen at a distance of half a square away, regardless of the red lights displayed on it. The platform must have appeared as a "knife-like" projection into the shadow cast by the body of the mixer. Under these circumstances it cannot be held as a matter of law that the deceased was chargeable with contributory negligence in failing to see and avoid it.

The situation in the present case was not dissimilar from that which confronted the plaintiff in *Lane v. E. A. Mullen, Inc.*, 285 Pa. 161, 131 A. 718, where his car collided with a coal box which projected from the side

of a steam shovel at the height of a little more than four feet from the ground. In that case, as here, plaintiff avoided the steam shovel but failed to clear the coal box. The evidence showed that his headlights would not necessarily have revealed the obstruction in his path because of differences in elevations. The following excerpt from this Court's opinion in that case is pertinent: ". . . it could not be said, at least as a matter of law, that a failure to take into account every detail of an object presented to a motorist by his lights is negligence. When we come to consider the situation with which plaintiff had to deal, we think it is evident that contributory negligence as matter of law is not manifested. As the steam shovel loomed out of the darkness, plaintiff could have stopped his car before striking it, but, concluding there was space sufficient to go around it, he turned his car to the left. In so doing, the projecting box on the left side of the steam shovel, even if the rays of his lamps had shown high enough to reach its elevation, would have been thrown into the shadow of the shovel and would have been obscured from his view,—this would have been the case whether his lights as he was turning extended for two hundred feet or thirty feet,—and therefore the state of his lights as to their disclosure ability did not cause him to strike the projection; defendant's failure to so light it that it would be seen was the sole cause."

The remaining question is raised by the separate appeal of Vito A. R. Canuso, one of the defendants, who claims that he was not a partner of his father and brother, the other appellants, who admittedly were engaged in the paving construction and operated and controlled the concrete mixer. Vito filed an affidavit of defense specifically denying the partnership relation as of the date of the accident and denying that the concrete mixer was operated or controlled by him or his agents. Plaintiff's only proof on the point was to introduce in evidence a certificate of the Secretary of the Common-

wealth certifying that the three defendants, including Vito Canuso, had filed a fictitious name registration in that office dated January 10, 1929, under the Act of June 28, 1917, P. L. 645, as amended (54 PS sections 21 et seq.). This set forth the style of their business as Francis A. Canuso & *Sons*. It was further elicited by cross-examination of Canuso, Sr., that Vito had signed a similar registration which was filed in the prothonotary's office on December 31, 1928, when he was eighteen years of age. Neither of these registrations had been cancelled prior to the accident, as might have been done under the Act of June 20, 1919, P. L. 542 (54 PS sec. 25). Appellant rebutted this evidence by the testimony of his father to the effect that his son Vito had never been a partner or received a share of the profits, but was merely an employee not entitled to execute contracts or other documents for the firm. All the partnership contracts, including the one covering the work being done on Frankford Avenue at the time of the accident, were executed in the firm name of Francis A. Canuso, Sr., and Jr., doing business as Francis A. Canuso & *Son*.

Vito Canuso's point for binding instructions in his favor was refused. We think in this the court below erred, and should have withdrawn from the jury the question of his liability. The purpose of the Fictitious Names Act was to protect those who deal with persons carrying on a business under an assumed name, and to enable them to know with whom they do business: *Lamb v. Condon et al.*, 276 Pa. 544, 120 A. 546; *Merion Twp. School Dist. v. Evans et al.*, 295 Pa. 280, 145 A. 288; *Engle v. Capital Fire Ins. Co.*, 75 Pa. Super. Ct. 390. It also serves the purpose of identifying those against whom in certain circumstances claims for damages, arising from either tort or contract, should be made. This action being in trespass, to recover for a tort, there was in the case no question of estoppel, or of plaintiff's reliance on Vito's membership in the firm, as

there might be in a suit on a contract. The affidavit of defense which he filed denied his membership, any relationship of agency, and participation in operation or control of the concrete mixer, the dangerous instrumentality which caused the accident. This cast the burden on plaintiff to show the affirmative of these facts, if she intended to hold Vito liable as a partner. The other defendants filed no affidavit of defense. This was not an admission as to Vito's participation therein of which plaintiff could avail herself.

How did plaintiff meet her burden of proof? Against the other two defendants she relied upon their admission, by reason of their failure to file an affidavit of defense, that they controlled the mixer when the accident occurred. She proved an admission by Vito Canuso made in 1929 that he was a partner of Francis A. Canuso & *Sons* at that time. She produced no evidence, as against Vito, that Francis A. Canuso & *Sons* were responsible for the accident, or were in charge of the mixer at the time. His admission, made in 1929, that he was a partner of that firm was not an admission that the firm of Francis A. Canuso & *Son,* which had the contract to do the work, was a partnership with which he had any such connection as to permit liability to be imposed upon him. The similarity in names, which in many instances might suffice to take the question to the jury, is obvious, but where the liability is in tort such a similarity should not be allowed to overcome a distinction clearly established. All the other evidence submitted on Vito's behalf indicated that the parties in control were his father and brother only. To fix liability on Vito, plaintiff had the burden of proving that he participated in the tort; this she failed to do. The judgment against him cannot stand.

The judgment is affirmed as to defendants Francis A. Canuso, Sr., and Francis A. Canuso, Jr.; as to defendant Vito A. R. Canuso, the judgment is reversed and is here entered for him, n. o. v.