## Thomson v. O. M. Scott Credit Corp.

*Reilly, Fogwell & Lentz*, for petitioners.
*Griffith & Corliss*, for defendants.

RILEY, J., March 15, 1962.—This is a declaratory judgment proceeding in which all facts are presented in the petition filed. These facts are as follows:

Petitioners, prior to September 6, 1958, were a partnership operating a store in the Borough of West Chester, Pennsylvania (the type of store does not appear in the facts stated in the petition), under the assumed or fictitious name of "J. B. Simon and Brother", said name being duly registered in the fictitious names docket by petitioners. On September 6, 1958, petitioners sold and transferred "all the assets and good will of the business known as J. B. Simon and Brother and located at 127 West Gay Street, West Chester, Chester County, Pennsylvania" to Joseph A. Tigue and Helen A. Kistner who, on September 8, 1958, added their names to the registration of the fictitious name and the names of petitioners were deleted. To secure the balance of purchase price, $28,092.38, petitioners entered into a security agreement with the purchasers which described petitioners as "secured party" and the buyers as "debtor".

The security agreement provided, inter alia;

"2. Creation of Security Interest. The secured party shall have a security interest in the collateral described in paragraph 3 to secure the balance of the purchase

price $28,092.38 for the purchase of the business located at 127 West Gay Street, West Chester, Pennsylvania.

"3. Description of collateral. The inventory, furniture and fixtures of debtors business.

"4. After-acquired property. The security interest of the secured party under this agreement extends to all collateral of the kind which is subject of this agreement which the debtor may acquire at any time during the continuation of this agreement in connection with the operation of the business of the debtor."

The agreement was drawn in the names of petitioners and buyers, referred to the business located at 127 West Gay Street, West Chester, Pennsylvania, but did not use or refer to the fictitious name of the business as "J. B. Simon and Brother."

On September 15, 1958, copies of the security agreement were filed as financing statements with the Secretary of the Commonwealth and the prothonotary of Chester County pursuant to article IX of the Uniform Commercial Code.

On November 9, 1959, defendant entered into a "Trust Receipt Agreement" with buyers, executed on behalf of buyers as "J. B. Simon and Bro., 127 Gay Street, West Chester, Pa., authorized signature, Joseph A. Tigue, Partner." The trust receipt agreement was filed with the Secretary of the Commonwealth and the prothonotary of Chester County as trust receipt financing on November 19, 1959. The terms of the trust receipt are as follows:

"The undersigned Dealer, as Trustee, and Entruster agree to engage in Trust Receipt financing of the acquisition by Trustee of grass seed, fertilizer, weed controls, pest controls, spreaders, mowers and other lawn products, all bearing the brands and trade marks of the O. M. Scott & Sons Company. Entruster

will direct said Company to deliver said products from time to time as ordered by Dealer.

"(a) Dealer agrees to hold said products in trust for the sole purpose of making sales to customers, functioning as a retailer and not as a wholesaler.

"(b) Dealer agrees to hold a sufficient proportion of the funds received from such sales for payment to Entruster, as billed for such products sold.

"(c) Either party may terminate this Trust Receipt on notice. In such event Dealer will surrender to Entruster his complete stock of Scotts products, proceeds thereof to be credited to Dealer."

Subsequent to November 18, 1959, defendant engaged in numerous trust receipt transactions with J. B. Simon and Brother and included various lots of grass seed and lawn care products to be sold at retail by J. B. Simon and Brother. Although petitioners' financing statement was on record, no notice of any kind was ever accorded them that defendant was conducting trust receipt transactions with J. B. Simon and Brother.

On or about November 1, 1960, buyers breached their purchase agreement by failing to make payments as required and petitioners took possession of all existing inventory, furniture and fixtures of J. B. Simon and Brother, located at 127 West Gay Street, West Chester, on February 7, 1961. Included in the goods and articles taken were certain lots of seed acquired by J. B. Simon and Brother from defendants to the value of $2,300. Defendant made claim to the seed, alleging their trust receipt as basis for its right. By agreement, the seed was turned over to defendant in return for defendant's bond in the sum of $2,300 to stand in place of the seed, the substitution being made to permit the disposal of the seed with no rights of any of the parties to be waived or prejudiced in any degree, the condition of the bond being the ultimate

determination "by agreement between the parties or by a final judgment of a court of competent jurisdiction of the interest of the principals in said Trust Receipt goods" as superior or inferior to the rights of petitioners.

Article 9, sec. 102-1(a) and 2, of the Uniform Commercial Code of April 6, 1953, P. L. 3, 12A PS §9-102, clearly includes both types of transactions involved in this litigation within the regulatory provisions of the act, the one intending to create a security interest in personal property and the other involving a trust receipt. We view there are two questions of law raised by the facts presented in the ultimate determination of the superiority or inferiority of the respective security agreements. The first legal question for determination is whether the seed in question is "inventory" within the definition of the Commercial Code and intent of the parties and, if so determined, is the security agreement petitioners filed sufficient to place defendant on notice of a prior security agreement.

The question of superiority of claims readily resolves itself to a determination of whether petitioners' security interest was properly perfected. The security interest applies to inventory and seed comes within the definition of inventory under section 9-109(4): " 'inventory' if they are held or are being prepared for sale . . ." It is an agreed fact that the trust receipt transactions were "numerous and varied lots of grass seed and lawn care products to be sold at retail by J. B. Simon and Brother" (paragraph 13 of petition, admitted in answer). The security agreement of petitioners applied "to all collateral of the kind which is subject of this agreement which debtor may acquire at any time . . .". The intent to include future inventory within the security terms is perfectly clear.

If properly perfected, the security interest of petitioner must prevail. If defendant's trust agreement were not considered a purchase money interest, it would be secondary by the simple fact of being second in point of perfection under section 9-312(3). If viewed as a purchase money interest, as we determine it to be, petitioner still prevails under the provisions of section 9-312(4), said section giving priority to purchase money security interests over previously perfected interests in after acquired property but only ". . . if before the debtor receives it the purchase money party also notifies any secured party who has made a prior filing covering inventory of the type concerned. Such notification must describe the inventory concerned, state that the interest is a purchase money security interest and specify its amount . . ." It is apparent that defendant, having a purchase money interest, might easily have protected itself by merely giving petitioner notice containing the required information. It is admitted that defendant gave no notice except the filing of its trust receipt, which is not the actual notice required by the code, nor does it contain the specific information necessary to comply with section 9-312(4).

Defendant's argument to counter his apparent lack of priority is that petitioners never perfected their security as to give defendant proper constructive notice. Defendant points to the fact that petitioners' security agreement is executed by the individual petitioners and individual buyers and nowhere mentions J. B. Simon and Bro., and therefore it was not properly filed in the offices of the secretary of the Commonwealth and the prothonotary of Chester County. Under the requirements of section 9-203-1(b), an effectively protected security interest must be supported by a written security agreement signed by the debtor. We find the security agreement to have been so

executed. The real parties in interest and the debtor are not J. B. Simon and Bro., but Joseph A. Tigue and Helen A. Kistner.

There is no deception in the use of the fictitious name and, as is evident from the trust receipt itself, executed by debtor as "J. B. Simon Bro. by Joseph A. Tigue, partner", defendant must have been actually aware of the fact that it was a fictitious name with at least two or more parties as the real parties in interest. Its means of determination of the identity of the parties was in the very offices in which it filed its own security interest trust receipt. Even were it not actually aware of the debtors' personality or identity, the very purpose of the Fictitious Names Act is to protect those dealing with persons operating under a fictitious name and enable them to ascertain the identity of the parties with whom they are dealing and our courts have consistently held that the registration is constructive notice of the nature of the person or business with whom a party is dealing: Ulick v. Vibration Specialty Co. 348 Pa. 241; Rowland v. Canuso, 329 Pa. 72; Lamb v. Condon, 276 Pa. 544; Mack's Estate, 111 Pa. Superior Ct. 20; and Houser v. Childs, 129 Pa. Superior Ct. 565, the latter holding that proper indexing (a mechanic's lien) should be in the individual name and not the fictitious name. In Mack Estate, the principle determined was closely analogous to the instant case, decedent having operated a business under a registered fictitious name and the Superior Court holding that the advertising of his estate account was effective notice as to business creditors who had dealt with decedent under his fictitious name only.

The final argument of defendant is that "inventory" is too vague a description and that petitioners security interest must be more specific. Section 9-110 expressly states: "For the purposes of this Article any description is sufficient whether or not it is specific if it rea-

sonably identifies the thing described". The code repeatedly refers to security interests in "inventory" and defines the term as above noted. All goods held for sale come within the scope of the term and, as applied here, are readily identifiable in the retail trade. To require enumeration of all types of articles handled would be unreasonably burdensome and neither within the letter nor the spirit of the code. Certainly one who sells to a retailer must be aware of the character of his goods and the disposition contemplated by the buyer and that the goods sold would become inventory as defined in the code and subject to a security agreement declaring a security interest in future inventory.

## Order

We do hereby determine and adjudge the security interest of petitioners, Frank G. Thomson, and Frank G. Thomson and Mary L. Thomson, trustees for Wilmer Thomson was properly perfected when the security agreement with Joseph A. Tigue and Helen A. Kistner, debtors, was filed as required by the Uniform Commercial Code and established a security interest superior to that of defendant, O. M. Scott Credit Corporation, as the same applied to the seed delivered to the debtor under the trust receipt.