**UNITED STATES of America and Joseph R. Lawlor, Special Agent, Internal Revenue Service**

v.

**AMERICAN STANDARD REMODELING CORPORATION and James P. Shaw.**

**Civ. A. No. 64–1324.**

United States District Court
W. D. Pennsylvania.

March 28, 1966.

James A. McKenna, Asst. U. S. Atty., Pittsburgh, Pa., for plaintiff.

Kalman A. Goldring, Pittsburgh, Pa., for defendants.

ROSENBERG, District Judge.

This action came on for final hearing. It is a proceeding by which the United States of America and its Special Agent in Internal Revenue Service, Joseph R. Lawlor, seek to judicially enforce a summons issued by the plaintiff Lawlor to procure for inspection the books, records and other detailed business data for the years 1961, 1962 and 1963, relating to the operation of the American Standard Remodeling Corporation (American Standard) including operations conducted by that corporation under the name and style of U. S. All Steel Furnace and Construction Company.

This action is brought by authority of the 1954 Internal Revenue Code, § 7402 (b).[1] The plaintiffs' authority to issue the summons was premised on § 7602.[2]

Actually, there is no great dispute as to the facts or any issue as relates to the facts. I find that Joseph R. Lawlor, Special Agent for the Internal Revenue Service, sought to examine records as they related to tax returns for the years 1961 and 1962, and for the tax liability for the year 1963; that a summons named James P. Shaw, as President of American Standard; that another business entity known as U. S. All Steel Furnace and Construction Company (U. S. All Steel) also existed and did the same kind of

---

1. 26 U.S.C. § 7402(b): To enforce summons.—If any person is summoned under the internal revenue laws to appear, to testify, or to produce books, papers, or other data, the district court of the United States for the district in which such person resides or may be found shall have jurisdiction by appropriate process to compel such attendance, testimony, or production of books, papers, or other data.

2. § 7602. Examination of books and witnesses

For the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax or the liability at law or in equity of any transferee or fiduciary of any person in respect of any internal revenue tax, or collecting any such liability, the Secretary or his delegate is authorized—

(1) To examine any books, papers, records, or other data which may be relevant or material to such inquiry;

(2) To summon the person liable for tax or required to perform the act, or any officer or employee of such person, or any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax or required to perform the act, or any other person the Secretary or his delegate may deem proper, to appear before the Secretary or his delegate at a time and place named in the summons and to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry; and

(3) To take such testimony of the person concerned, under oath, as may be relevant or material to such inquiry.

business at the place of the corporation; that the income and operational results of U. S. All Steel were reported, or included, in the Federal Income Tax Returns filed on behalf of the corporation, American Standard Co., for the years in question; that the individual tax returns of James P. Shaw did not include the results of the operation of the proprietorship; that James P. Shaw did not file a Schedule C with his individual tax return to report the income or operational results of U. S. All Steel; that James P. Shaw was the owner of the fictitious name entity, U. S. All Steel; that James P. Shaw also owned all of the stock of the corporation; that he acquired the fictitious entity, U. S. All Steel, and control of American Standard by purchase—although it is not indicated when this occurred; and that a fictitious name certificate was filed in accordance with the laws of the Commonwealth of Pennsylvania[3] indicating that James P. Shaw was the owner of the fictitious entity, U. S. All Steel, as of March 25, 1963. These facts are not disputed.

The defendants' contention, as it was emphasized at the trial, is simply that the summons addressed to James P. Shaw "as President" precluded service upon James P. Shaw as the owner of the fictitious name entity, U. S. All Steel.

The Government's contention is that it provided broadly for notice to James P. Shaw in whatever capacity he stood, either as an officer of the corporation, or as the owner, shareholder or individual, as the case may be, when it included the words "including operations conducted by that corporation under the name and style of U. S. All Steel Furnace and Construction Company * * *."[4]

■ The only definite evidence in this case upon which the defendant may base any argument that U. S. All Steel was a separate enterprise is the filing of the fictitious name certificate in March, 1963. Prior to that time, in accordance with Pennsylvania law, no one could have been presumed to know the ownership of U. S. All Steel. It was only by the filing of the certificate that the public was informed. The purpose of the Fictitious Names Act was to protect those who deal with persons carrying on a business under an assumed name, and to enable them to know with whom they do business. Rowland v. Canuso, 329 Pa. 72, 79, 196 A. 823 (1938); White v. Rairdon, 52 Pa.Dist. & Co.R. 558 (1945); Wise v. Levin, 42 Pa.Dist. & Co.R. 354 (1941); Wolf v. William Goldman Theatres, Inc., 26 Pa.Dist. & Co.R. 616 (1936).

Therefore, for any business which may have been conducted by an individual owner as such business was blended with, made a part of, or non-segregated from the corporation business, it could not have been the function of the plaintiff or his duty to know that the business was a fictitious entity or owned by an individual person, or that it was in any way seg-

---

3. 54 P.S. § 28.1 Application to be filed; contents

No individual or individuals shall hereafter carry on or conduct any business in this Commonwealth under any assumed or fictitious name, style or designation unless the person or persons conducting or carrying on the same shall first have filed in the office of the Secretary of the Commonwealth and in the office of the prothonotary * * * an application, under oath, and signed by such person or persons, setting forth the real name or names and the residences, including number and street, if any, of all the persons owning or interested in said business, the name, style or designation under which said business is being or will be carried on or conducted, a brief statement concerning the character or nature of said business and the location of the principal office or place of business, including number and street, if any. * * * 1945, May 24, P.L. 967, § 1; 1959, Sept. 23, P.L. 936, § 1, as amended 1965, Sept. 30, P.L. ——, No. 295, §§ 1, 2.

4. The summons provided for the production of "All books, records and other memoranda relative to the operation of the American Standard Remodeling Corporation, including operations conducted by that corporation under the name and style of U. S. All Steel Furnace and Construction Company * * *"

regated or separated from the corporation. For this alone, the plaintiff was entitled to examine the books of the corporation in order to determine its affiliation or connection with any other business with which it may have been associated or connected, and by which records could have or should have been maintained from which information may have been had and calculations made for income tax purposes. This would have also been projected into the year 1963, at least up until March, 1963, when the fictitious name certificate was filed. Thus, for the year 1963, it was well within the surmise and within the limited bounds of authority of the plaintiff to inquire into all of the records relating to the corporation's operations.

█ Since U. S. All Steel, the fictitious entity, had been interconnected with, and its functions and business blended with the corporation, the plaintiff was entitled by law to make research and inquiry of any inter-connected or associated records in the name of U. S. All Steel as it did business at the place of business of the corporation during these years.

█ The statute dealing with the examination of books of taxpayers and witnesses by the Secretary of Internal Revenue should receive liberal construction. See Falsone v. United States, 205 F.2d 734, C.A. 5, 1953, where the terms of the subpoena were interpreted to be broad enough to require the accountant to which it was addressed to produce his work papers and notes as they related to his client's tax liability.

It is also proper here to mention what the court said in Brody v. United States, 243 F.2d 378, C.A. 1, 1957, at page 384:

"[W]e do not read § 7604(b) as narrowly as appellant asks us to do. The power of the enforcing court is stated in broad terms as a power 'to make such order as he shall deem proper' to enforce obedience to the requirements of the summons. In the situation presented to the district court in this case, we do not think the court

should be powerless to promulgate an order, on request of the Revenue Service, embodying a reasonable modification of the original summons. * *."

The defendants cite Wright v. Detwiler, 241 F.Supp. 753 (D.C.Pa., 1964). In that case, Judge Willson of this Court, in refusing to order compliance with certain paragraphs of the summons there in question, held that the paragraphs were vague and indefinite, and in some respects called for personal records and data rather than corporate records. There was no question presented as to the nature of any particular records, whether they were in fact personal or corporate records.

Such is not the case here. The crucial question of fact presented in this case is whether the records desired and requested by the Government, the records of the operations of U. S. All Steel, are the records of American Standard on whose tax returns the financial operations are reported, or whether the records are those of James P. Shaw, individual, who admittedly submitted no tax returns on the financial operations of U. S. All Steel.

█ The contention of James P. Shaw is that when the word "president" was added after his name in the summons, he was not summoned as an individual. He ignores, however, in this connection that the summons provided for the production of the books and records of U. S. All Steel Furnace and Construction Company of which he was the sole custodian. Under all events, he had ample, clear and definite notice of what the summons meant and required and under these circumstances the word "president" was superfluous for it was addressed to the custodian of the records rather than the official. Since he had ample notice, his only defense—and such was not raised here—is that the records are not in his possession.

This case is similar to one which came to the United States District Court for the Southern District of New York in Application of Burr, 171 F.Supp. 448 (1959), an action to vacate a certain summons to appear, to testify, to produce

records, etc. In this case a question was raised by a motion to quash a summons pursuant to § 7602 because it was addressed to "Emerald Plastics Corp., 220 Fifth Avenue, New York 1, N.Y., Jack M. Burr" which "[called] for appearance before a special agent of the Internal Revenue Service to give testimony relating to the tax liability of Equality Plastics * * *." (At page 450). The motion to quash was based on several grounds which included an attack on its validity because it failed to state whether Burr was summoned to appear in an individual capacity or as president of Emerald Plastics Corp.; and further, that compelling him to testify would violate his constitutional rights. At page 450 Judge Frederick van Pelt Bryan made this holding:

> "There is no merit whatsoever to the first two contentions. Authority to issue the summons is plainly conferred by § 7602 of the Internal Revenue Code. The summons requests testimony to be given with respect to the tax liability of Equality Plastics. It was served on Emerald Plastics through its president Burr and Emerald must plainly respond. The answering affidavit of the special agent makes it appear that the summons was intended to be directed against Emerald Plastics and Burr as its president and not against Burr individually. But even if it were intended to be directed against him individually (and on its face it is), there is no reason why he should not be required to appear, and if he does appear to answer such questions as may be put to him regarding the tax liability of Equality Plastics. It is well settled that the Government has the right to examine third parties with respect to any knowledge they may have bearing on the tax liabilities of a taxpayer under investigation. Stone v. Frandle, D.C.D.Minn., 89 F. Supp. 222; United States ex rel. Sathre v. Third Northwestern National Bank, D.C.D.Minn., 102 F.Supp. 879."

The ruling in the Burr case, which I here adopt, disposes of any legal question in this regard raised by the defendants.

This opinion incorporates Findings of Fact and Conclusions of Law pursuant to Federal Rule of Civil Procedure 52. Accordingly, an order of compliance will be entered.

ORDER

And now, to-wit, this 28th day of March 1966, for the reasons set forth in the foregoing Opinion, it is hereby ordered and directed that the defendant comply with the summons as issued by the United States of America, The Commissioner of Internal Revenue, Joseph P. Lawlor, Special Agent, as interpreted by this Opinion.