# Philadelphia to use, Appellant, *v.* Fidelity & Deposit Company of Maryland.

*Municipailties—Municipal contracts—Principal and surety—Subcontractor under surety.*

1. Where an ordinance of a city requires a public contractor to enter a bond with sureties to protect all persons supplying him with labor and materials "either as a subcontractor or otherwise," a subcontractor under a contractor employed by the surety in the bond, who had been obliged to take over and complete the work, is entitled to the protection of the bond.

2. The word "otherwise" as used in the bond is not to be rejected as meaningless, but it is to be considered as relating to a provision that would become effective in the event of a subcontractor failing to do his part of the same kind of work.

3. Surety companies who go upon bonds for a consideration, are not entitled to the benefit of the rules of construction applicable to ordinary bonds of suretyship. Any doubtful language in such bonds will be construed most strongly against the surety and in favor of the indemnity which the assured had reasonable ground to expect.

Argued Dec. 20, 1910. Appeal, No. 203, Oct. T., 1910, by plaintiff, from judgment of C. P. No. 3, Phila. Co., March T., 1910, No. 317, on demurrer to statement of claim in case of City of Philadelphia to the use of Herbert W. Geshwind v. Fidelity & Deposit Company of Maryland. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Reversed.

Demurrer to statement of claim.
The facts are stated in the opinion of the Superior Court.

*Error assigned* was in sustaining the demurrer.

*C. S. Wesley,* of *Tustin & Wesley,* for appellant cited: Bowditch v. Gourley, 24 Pa. Superior Ct. 342; Philadelphia v. Stewart, 195 Pa. 309; Philadelphia v. Nichols Co., 214 Pa. 265; Philadelphia v. Wiggins, 227 Pa. 343.

*Chester N. Farr, Jr.,* with him *William A. Glasgow, Jr.,* for appellee, cited: Lancaster v. Frescoln, 192 Pa. 452; Bensinger v. Wren, 100 Pa. 500; American Tel. Co. v. Lennig, 139 Pa. 594; Miller v. Stewart, 22 U. S. 680; Philadelphia v. Nichols Co., 214 Pa. 265; Bowditch v. Gourley, 24 Pa. Superior Ct. 342.

OPINION BY ORLADY, J., March 3, 1911:

On April 5, 1909, Walter Titus entered into a written contract with the city of Philadelphia, by the board of public education, for the "erecting, building, setting up, and finishing complete and ready for use, in the best and most workmanlike manner" a new wing of a schoolhouse in the city, under and subject to the provisions of an ordinance of the city approved March 30, 1896.

Titus and the defendant surety company, jointly and severally, executed a bond for the performance of the contract, "in strict and exact accordance with specifications attached thereto and made a part thereof," the conditions of the bond being as follows: "That if the said Walter Titus shall and will promptly make payment to all persons, any and all sum or sums of money which may be due for supplying him with labor and materials, whether as a subcontractor or otherwise, in the prosecution of the work provided for in the said contract, and shall and will comply with all the provisions of the ordinance . . . . of the city of Philadelphia, entitled "an ordinance for the protection of subcontractors as well as for persons furnishing materials and labor for the construction of buildings for the city of Philadelphia, or for any other city work," approved March 30, 1896; then this obligation to be null and void, otherwise, to be and remain in full force and virtue."

The important part of this ordinance, is as follows: "That hereafter any person or persons entering into a contract with the City of Philadelphia for the erection or construction of any public buildings or for the prosecution or completion of any public work, or for repairs upon any public building or public work, either in the capacity of a

subcontractor or material and supply man, or for labor furnished upon said buildings or work, shall be required before commencing such work to execute a penal bond in such sum as may be required by ordinance or by the head of a Department or Bureau, together with such sureties as may be required by ordinance or said head of Department or Bureau, with the additional obligations that such contractor or contractors shall and will make payment to all persons supplying him or them with labor and materials, either as a subcontractor or otherwise, in the prosecution of the work provided in such contract."

On July 15, 1909, Titus made default and abandoned his contract. Notice of this was given to the defendant company, as the surety of Titus, when, the defendant on August 2, 1909, assumed the liability imposed by its bond and entered into a contract with Lynch Brothers, "to furnish all materials, tools and workmen, and to perform all labor in erecting, building, setting up, and finishing the contract of said Walter Titus, according to the plans and specifications thereof and in strict accordance with all the terms and conditions of the contract of said Titus with said city."

Pursuant to this contract, Lynch Brothers employed Geshwind, the use plaintiff, to furnish labor and materials, and do certain work in accordance with the plans and specifications of the original contract of the city with Titus.

By his statement of claim, "The plaintiff avers that he entered upon and performed all and singular the terms and conditions of said contract and completed the work therein specified according to the plans and specifications for the said Ashtenville School. That the said work as specified was done for and on behalf of the Fidelity and Deposit Company of Maryland, acting through the said Lynch Brothers, and the cost of labor and materials furnished by him amounted to $1,054.29 but when his work was completed, Lynch Brothers were insolvent and were then involved in bankruptcy proceedings."

This suit was brought to recover from the defendant the

amount of the plaintiff's claim, a demurrer was filed to the statement and after argument it was sustained. The learned court below was of the opinion that the right to proceed on the bond was limited to persons who were in direct contractual relations with Titus as a principal, and not to any independent subsequent contractors or material men, stating "the contract with Titus was at an end, any default by him in the payment of his subcontractors or material men dealing with him or them would necessarily come within the contemplation of the bond. Suit could be brought upon such claims under the bond filed in this case because the bond was conditioned for the payment of all sums due for materials or labor supplied by Titus, whether as a subcontractor or otherwise in the prosecution of the work. The materials supplied by plaintiff, however, were not supplied to Titus either directly or indirectly. Lynch had no relationship with Titus and as the basis of the action in this case is a bond, the plaintiff must show in his statement that by a reasonable construction of the bond he could be held to come within its terms."

The case hinges on the reasonable construction of the bond, and whether this plaintiff is within its terms. In construing it we must take with it the ordinance, which is made a part of the contract between the city and the defendant.

The title of the ordinance distinctly states its purpose to be "for the protection of subcontractors as well as for persons furnishing materials and labor for the construction of buildings for the city" and this without regard to any special contractual relation they may hold in the first instance, to the city. We said in Bowditch v. Gourley, 24 Pa. Superior Ct. 342, in regard to this ordinance, that "a contractor after having his bond approved cannot relieve his sureties from liability by permitting his subcontractors to deal with the work independent of his supervision. The liability to pay is his, to pay all persons supplying him or them with labor and materials whether as a contractor or otherwise. and on his default this liability succeeds to his

sureties.   To sanction any other construction would be destructive of the very purpose of the ordinance by taking from the honest laborer or material man the particular security which the city councils had provided for his protection.   Nor can the surety be relieved from liability because the condition of the bond is more comprehensive than is required by the ordinance."

The contract and consequent liability of the surety was not affected, so far as the rights of the city or other parties legally affected by it, by the default of the original contractor.   The liability of the surety was not changed by that default.   It was simply required to then take active charge of the matter and make good that default by performing the things which the contractor had failed to do. In this case it was to complete the undertaking of Titus, "in erecting, building, setting up and finishing complete the new schoolhouse, in strict accordance with all the terms and conditions of the contract of said Titus with said city of Philadelphia."   This it could do in any manner it saw fit, by its own hand or by a representative under the name of new contractor.   The surety proceeded to do this very thing by its contract with Lynch Brothers, and their failure did not change the situation.

While suretyship is spoken of generally as an accessory contract and presupposes the existence of a principal obligation, the rule is well settled that contracts of guaranty insurance, like other contracts are to be construed according to the sense and meaning of the terms which the parties have used, and the instrument is to be read in the light of the surrounding circumstances, and the purposes for which it was made.

In bonds of the kind here involved, which are executed upon a consideration, and by a corporation organized to make such bonds for profit, the rule relating to ordinary sureties is not applicable, and any doubtful language should be construed most strongly against the surety and in favor of the indemnity which the assured had reasonable ground to expect.   The rule applicable to

contracts of fire and life insurance is the rule, by analogy, most applicable to such a contract: Supreme Council Catholic Knights of Am. v. Fidelity & Casualty Co., 63 Fed. Repr. 48, and cases cited in 13 Am. & Eng. Ency. of Law (2d ed.), 10; 27 Am. & Eng. Ency. of Law (2d ed.), 452.

The liability of the surety remained until the building was completed according to the plans and specifications of the original principal. This the defendant assumed to do and it was entitled to the contract price for the work. The employment of Geshwind by Lynch Brothers, was as directly connected with the work for which they were liable as if he had been employed by Titus. He furnished labor and materials for the building it agreed to erect, and it received or was entitled to receive from the city the fruit of his labor and material, which should have been furnished by Titus. The words in the condition of the bond "whether as a subcontractor or otherwise in the prosecution of the work provided for in the said contract," were advisedly used to carry into effect the purpose of the ordinance.

In the event of the failure of the subcontractor the "otherwise" methods were entirely within the control of the surety, and, as the word is used, would cover the methods adopted by the surety, or their agent Lynch Brothers. The name given to the builder or material man is unimportant. The ultimate purpose was the completed building and the intervening agencies employed, and the names given to them are but means adopted by the surety as a party in interest in seeing that the contract was executed.

The radical meaning of the word "otherwise," which is always a relative word, is different from that to which it relates; Black v. Delaware & Raritan Canal Co., 22 N. J. Eq. 130, 400, and as used in this bond it is not to be rejected as meaningless, but is to be considered as relating to a provision that will become effective in the event of the subcontractor failing to do his part of the same kind

of work.   The controlling purpose of the ordinance was to secure payment to laborers and material men for the services and material used in the buildings of the city, whether as a subcontractor or otherwise—in a different manner—in another way—differently—in like respects,— in the prosecution of the work provided for in the contract: 21 Am. & Eng. Ency. of Law (2d ed.), 1016.

This construction has been given to this ordinance by the Supreme Court in Philadelphia v. Nichols Co., 214 Pa. 265, and Philadelphia v. Wiggins, 227 Pa. 343.   As said in Philadelphia v. McLinden, 205 Pa. 172, "The power of the city to exact the additional bond was upheld in Philadelphia v. Stewart, 195 Pa. 309, in which it was decided that the condition was not ultra vires and contrary to public policy, as it was the right of the city to protect itself against the risk of defective materials and workmanship in the construction of its public works, against which there is no right of lien, by exacting assurance from the contractor that he will pay the debts which he incurs.   The municipal policy was to protect the city by securing the claims of those who furnished materials and labor, and the language of the bond, to pay those who performed labor, is too clear to admit of doubt."

All through the contract of the defendant with Lynch Brothers runs the thought, that it is in execution of the contract of Titus with the city, and on which the defendant was liable, and as between Lynch Brothers and the defendant herein the relation of principal and agent was established to effect "the prosecution of the work" to completion.

The judgment of the court below is reversed, the record to be remitted that judgment may be entered in favor of the plaintiff for the amount of his claim.