UNITED STATES of America for the use and benefit of CLARK CONCRETE CONSTRUCTION CORP., a corporation, Plaintiff,

v.

JAMES STEWART COMPANY, a corporation, and New Amsterdam Casualty Company, a corporation, Defendants.

No. 2243.

United States District Court,
D. Idaho, E. D.
July 5, 1961.

R. Vern Kidwell Holden, Holden & Kidwell, Idaho Falls, Idaho, for plaintiffs.

John Sharp, Sharp & Anderson, Idaho Falls, Idaho, Wallace O. Tanner, Phoenix, Ariz., for defendants.

FRED M. TAYLOR, District Judge.

Plaintiff, Clark Concrete Construction Corporation, is a corporation organized and existing under the laws of the State of Idaho. Between the approximate dates of November 7, 1958, and October 3, 1959, it furnished to defendant James Stewart Company, a Texas corporation, and Tren Myers, an individual engaged in masonry contracting, certain building materials which were used in the con-

struction of government facilities at the National Reactor Testing Station in the State of Idaho. Defendant James Stewart Company was the prime contractor with the United States and Tren Myers was its subcontractor. The defendant New Amsterdam Casualty Company is James Stewart Company's surety on the payment bond which was provided in compliance with Section 270a, Title 40 of the United States Code, commonly known as the Miller Act.

■■ The physical work on the $1,-385,000 project was accepted as complete by the United States on August 3, 1960. Plaintiff claims there is a balance of $11,-205.11 due it for materials furnished and hereby seeks to recover the same under Section 270b of said Act, together with interest and attorneys' fees. Defendants' sole defense is that plaintiff failed to comply with the notice requirements of the Miller Act and, therefore, has no right to maintain this action. Insofar as is pertinent here, Section 270b(a) of the Act provides:

> " * * * That any person having direct contractual relationship with a subcontractor but no contractual relationship express or implied with the contractor furnishing said payment bond shall have a right of action upon the said payment bond upon giving written notice to said contractor within ninety days from the date on which such person did or performed the last of the labor or furnished or supplied the last of the material for which such claim is made, stating with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or supplied or for whom the labor was done or performed."

This notice provision was inserted in the Miller Act to protect the prime contractor who may with impunity pay his subcontractors after the ninety day period has elapsed if no claims by laborers or materialmen against the subcontractors have been brought to his attention by the prescribed mode of notice. Bow-

den v. United States, 9 Cir., 1956, 239 F.2d 572. However, the primary reason for the Miller Act is to protect persons whose labor and materials go into government projects, and to that end the Act's provisions are liberally construed. United States for Benefit and on Behalf of Sherman v. Carter, 1957, 353 U.S. 210, 77 S.Ct. 793, 1 L.Ed.2d 776; United States for Use and Benefit of Hopper Bros. Quarries v. Peerless Casualty Company, 8 Cir., 1958, 255 F.2d 137.

The conflict here concerns the technicalities of the above quoted notice provision. Defendants do not deny, for the evidence reveals, that in substance defendants were notified of plaintiff's claim far in advance of the date the last of the materials were furnished and they were aware of said claim at all times thereafter. Nevertheless, defendants urge that the dynamics of the Miller Act compel written notice within the ninety day period after the last of the materials have been furnished and the issues are framed accordingly.

Plaintiff began furnishing materials to Tren Myers, the masonry subcontractor, in November of 1958. In the months that followed substantial amounts of materials were obtained by him for which plaintiff received little or no payments. Concerned with this situation, plaintiff began looking to the defendants for satisfaction of the Tren Myers account. The status of the account was first brought to the attention of the James Stewart Company by a telegram dated May 1, 1959. (Exhibit No. 3). It informed said company that plaintiff had received no money on the account since December of 1958; that the present balance was $13,701.47; and that unless satisfactory payment was made within seven days, plaintiff would be forced to notify the government and the bonding company. Several days later, Marion Ward, plaintiff's sales manager, telephoned the James Stewart Company in Phoenix, Arizona and talked with A. C. Klotz, its chief accountant. Ward was promised that he would hear from them by May 11. Plaintiff heard nothing and

on May 14, 1959, wrote a letter to the defendant New Amsterdam Casualty Company in Baltimore, Maryland, advising it of the situation. (Exhibit No. 5). Thereafter, plaintiff, through various officers, had telephone conversations with officials from each of the defendant companies who assured plaintiff that some money would be forthcoming. During the latter part of June, or the first part of July, Ward and Merlin Clark, the latter as President of the plaintiff corporation, had a discussion with Thomas C. Sorenson who was employed by the James Stewart Company as its project manager. It appears from the evidence that said defendant was also having difficulties with Tren Myers. Sorenson advised Ward and Clark that the James Stewart Company was taking over the masonry work. He urged plaintiff to continue furnishing materials and assured plaintiff that the James Stewart Company would take care of the Tren Myers account. Plaintiff continued to furnish materials and charged it to the account. On July 13 the James Stewart Company paid $5,715.30 on said account. Plaintiff acknowledged receipt of the payment on the same date and asked why only that amount had been paid. (Exhibit No. 4). Defendant replied by a letter dated July 23, 1959, explaining that labor furnished by it for performance of the masonry work resulted in a reduction of the amount to what was actually paid. (Exhibit No. 6)

During the latter part of July, the masonry work was near completion. On July 27, 1959, plaintiff furnished $15.80 worth of materials, including six bags of "slik lime". On July 29 three bags of "slik lime" were supplied, and no other materials were furnished until October 3 when Fent Clark, an employee of the James Stewart Company, picked up one bag of "slik lime" from plaintiff which was valued at $1.55. Between these last two dates there was no written correspondence between any of the parties, although plaintiff had discussed the account with Sorenson and Klotz of the James Stewart Company. Then on October 29, 1959, plaintiff again demanded payment by a letter to said company in which Tren Myers certified that the amount demanded therein was correct, due and payable to plaintiff. (Exhibit No. 7). This letter was answered by Wallace O. Tanner, General Counsel and Assistant to the President of the James Stewart Company, who is also of counsel here and testified at the trial of this cause. He questioned the amount due plaintiff and requested plaintiff to forward the invoices on all materials delivered to the job in order that he might definitely establish the amount due. (Exhibit No. 8). The invoices were forwarded by plaintiff, enclosed in a letter informing the defendant that unless it was heard from by November 20, 1959, the bonding company and the government would be notified. (Exhibit No. 9). By a telephone conversation of November 23, 1959, plaintiff was assured by Tanner that he would have some information within a week. Again by telephone conversation on December 7, 1959, Tanner reputedly said that within a week or ten days a check would be issued for the entire amount. This was not done. Plaintiff wrote to the bonding company on December 23, 1959, informing it of the current status of the Tren Myers account. (Exhibit No. 10). This defendant replied that it was taking the matter up with the contractor. (Exhibit No. 11). Plaintiff wrote to the bonding company again on February 10, 1960. (Exhibit No. 12). The reply, dated February 18, assured plaintiff that the account would be taken care of promptly. (Exhibit No. 13). The correspondence ended with a letter to the bonding company and a copy thereof to plaintiff from the James Stewart Company. Therein said company recognized a claim for materials furnished in the amount of $11,205.11, but, for the first time, denied liability on the ground that proper notice had not been received. (Exhibit No. 14). Plaintiff instituted this action on November 25, 1960.

It is obvious from the record that plaintiff's conduct afforded the defendant

James Stewart Company more notice of the claim than it would have had if plaintiff had merely complied with the notice provision of the Miller Act. If, in fact, plaintiff did not comply with the technicalities of said Act concerning the form of notice, defendants were not prejudiced. On the contrary, it is plaintiff that may have been prejudiced by the conduct of the James Stewart Company. Its repeated assurances of payment may have lulled plaintiff into a false sense of security prior to and during the statutory ninety day period within which notice must be given pursuant to the requirements of the Miller Act. Under these circumstances some courts might invoke the doctrine of estoppel rather than have the defendants prevail on such a hollow defense. See United States for Use and Benefit of Hopper Bros. Quarries v. Peerless Casualty Company, supra; United States ex rel. and for Use and Benefit of Korash v. Otis Williams & Company, D.C.E.D.Idaho 1939, 30 F.Supp. 590. However, the applicability of the doctrine of estoppel to defendants' defense is questionable. United States for Use of Bruce Co. v. Fraser Construction Company, D.C.W.D.Ark.1949, 87 F.Supp. 1.

■ The Miller Act requires written notice to be given the prime contractor within ninety days from the date the last of the materials were furnished, unless the materialman has had a direct contractual relationship, express or implied, with the prime contractor. Assuming the plaintiff had no such contractual relationship here, the crucial date in question is that of October 3 when the James Stewart Company was furnished one bag of "slik lime". If this is the correct date on which the last of the materials were furnished, then plaintiff's written notice of October 29 would be within the ninety day period and plaintiff should prevail. Defendants contend the July 29 date, on which three bags of "slik lime" were furnished by plaintiff, began the running of the ninety day period. They argue that since the October 3 purchase was delivered to it and not Tren Myers,

this date should be ignored. Defendants overlook the fact that on both dates the same materials were ordered and charged to the same account. On both occasions the James Stewart Company was performing the masonry work, having taken over the Tren Myers subcontract and having asked plaintiff to continue furnishing materials. The record does not indicate that the plaintiff instigated the October 3 purchase in order to extend the ninety day period. Said purchase was made by an employee of the James Stewart Company. The Court finds from the evidence that the date on which the last of the materials were furnished by plaintiff for the masonry work was on October 3 and that plaintiff's written notice of October 29 was within the ninety day period required by the Miller Act. Cf. United States for Use and Benefit of Westinghouse Electric Supply Co. v. Endebrock-White Company, 4 Cir., 1960, 275 F.2d 57; United States for Use and Benefit of General Electric Supply Corporation v. Harry Hershson Company, D.C. S.D.N.Y.1943, 52 F.Supp. 832.

■■ Defendants' argument assumes that notice was essential under the circumstances here and overlooks the fact that no notice is required where a person furnishing materials has a direct contractual relationship, express or implied, with the prime contractor. American Casualty Co. of Reading, Pa. v. Southern Materials Company, 4 Cir., 1958, 261 F.2d 197; United States for Use of Bruce Co. v. Fraser Construction Company, D.C.W.D.Ark.1949, 87 F.Supp. 1; United States ex rel. Hargis v. Maryland Casualty Company, D.C.S.D.Cal.1946, 64 F.Supp. 522; United States for Use of Strona v. Bussy, D.C.S.D.Cal.1943, 51 F.Supp. 996. The James Stewart Company admits that it took over the masonry subcontract for which plaintiff was furnishing materials. It urged plaintiff to continue furnishing the materials and at the same time promised to take care of the Tren Myers account. On July 13 it made a payment on the account and plaintiff provided the necessary materials with which said defendant completed the

masonry work. Under these circumstances there was an implied contract between plaintiff and the James Stewart Company, and no notice was required under the Miller Act.

Accordingly, it is the opinion of this Court that judgment should be entered in favor of the plaintiff and against the defendants in the sum of $11,205.11, together with interest at the rate of six per cent per annum from the 2nd day of January 1960 to date of judgment, and against the defendant New Amsterdam Casualty Company for the additional sum of $1,700 as attorneys' fees.

Counsel for the plaintiff shall prepare Findings of Fact, Conclusions of Law and a proposed Judgment, serve copies of the same on counsel for the defendants, and submit the originals to the court.