760 F.2d 74
 NICHOLSON CONSTRUCTION COMPANY, Appellee,
v.
The STANDARD FIRE INSURANCE COMPANY, the General Reinsurance
Corporation, North American Reinsurance Corporation, the
Reinsurance Corporation of New York, Fidelity & Deposit
Company of Maryland, Employers Reinsurance Corporation, and
Aetna Casualty & Surety Company, Appellants.
 No. 84-1319.
 United States Court of Appeals,
Third Circuit.
 Argued Feb. 25, 1985.
Decided April 30, 1985.
 
 Peter F. Marvin (argued), Miller, Schreiber & Sloan, Philadelphia, Pa., for appellants.
 William R. Sneed, III (argued), Alan D. Keiser, Kenneth M. Cushman, Pepper, Hamilton & Scheetz, Philadelphia, Pa., for appellee.
 Before ADAMS, WEIS and WISDOM,* Circuit Judges.
 OPINION OF THE COURT
 WEIS, Circuit Judge.
 
 
 1
 The district court decided that a subcontractor three levels removed from the prime contractor had standing to sue on a construction payment bond. Viewing the issue against the background of the state bonding law, we conclude that the words "as subcontractor or otherwise" in the payment bond do not extend its coverage beyond the two tiers recognized by the statute. Accordingly, we reverse the summary judgment against the sureties.
 
 
 2
 Plaintiff filed this suit against the surety companies on a payment bond issued in connection with the construction of a sewage plant for the City of Philadelphia. The district court entered summary judgment for plaintiff, and defendants appeal.
 
 
 3
 The prime contractor for the project was a joint venture composed of Buckley & Company, Inc. and others, hereafter referred to as Buckley. Buckley subcontracted part of the work to C. Hannah Construction Company, which in turn subcontracted to Geofreeze Corporation. That company then subcontracted for specialized drilling services with plaintiff Nicholson Construction Company. Plaintiff, therefore, was a subcontractor to a sub-subcontractor, or three steps removed from the prime contractor.
 
 
 4
 Before commencing work on the project, Buckley executed a payment bond in favor of the City of Philadelphia on a form provided by the city with defendants acting as sureties. The bond provided for payment of sums due for material furnished, equipment or machinery used, and labor supplied in the prosecution of the work required by the terms of the prime contract.
 
 
 5
 The bond also included the following provision, which is the subject of this controversy:
 
 
 6
 "... every person ... who, whether as a sub-contractor or otherwise, has furnished material, rented equipment or machinery, rendered services or supplied or performed labor in the prosecution of the work above mentioned and described, and who has not been paid therefor, may sue in assumpsit on this bond...."
 
 
 7
 An additional provision stated that any person "who has no contractual relationship, express or implied, with the [prime contractor] shall not have a right of action" on the bond unless written notice was given to the prime contractor within a specified time.
 
 
 8
 The bond was required by the city in accordance with the Pennsylvania Public Works Contractors' Bond Law of 1967, Pa.Stat.Ann. tit. 8, Sec. 191 et seq. (Purdon Supp. 1984-85). The statute provides that the prime contractor must furnish a performance bond and a payment bond, the latter being for 100 percent of the contract amount. The payment bond "shall be solely for the protection of claimants supplying labor or materials to the prime contractor ... or to any of his subcontractors." Pa.Stat.Ann. tit. 8, Sec. 193(a)(2).
 
 
 9
 The Act further provides that a claimant "who has a direct contractual relationship with any subcontractor of the prime contractor ... but has no contractual relationship, express or implied, with such prime contractor" may bring an action on the bond only after giving notice to the prime contractor within a specified time. Pa.Stat.Ann. tit. 8, Sec. 194(b).
 
 
 10
 This suit on the bond was filed when Geofreeze was unable to pay Nicholson for the work it had performed. The sureties defended on the basis that Nicholson had no standing under the terms of the bond because its relationship had not been with Buckley or any of its subcontractors. There being no dispute about the material facts and the parties having agreed on the amount in dispute, the matter was submitted on summary judgment motions. The district court did not prepare a written opinion but entered judgment for plaintiff.
 
 
 11
 On appeal, the parties agree that Pennsylvania law controls and that the critical issue is the legal effect of the phrase, "whether, as subcontractor or otherwise" appearing in the bond.
 
 
 12
 The sureties contend that the language of the bond should be read in conformity with the Bond Law. Nicholson concedes that such a reading would preclude recovery because its services were not supplied to a subcontractor but rather to a sub-subcontractor. Nicholson argues, however, that use of the term "or otherwise" establishes an expansive scope for the bond--coverage which exceeds the requirements of the Bond Law and which would include payment for the work performed for Geofreeze.
 
 
 13
 When, as here, construction of a contract is the issue before an appellate court, the question is one of law and freely reviewable. Ram Constr. Co. Inc. v. American States Ins. Co., 749 F.2d 1049, 1053 (3d Cir.1984). "Construction, which may be usefully distinguished from interpretation is a process by which legal consequences are made to follow from the terms of the contract and its more or less immediate context and from a legal policy or policies that are applicable to the situation." Patterson, The Interpretation and Construction of Contracts, 64 Col.L.Rev. 833, 835 (1964).
 
 
 14
 No closely analogous situation has been found in the state decisional law. Nicholson relies on cases which make clear that while a bond provided for a municipal construction contract must meet the minimum required by the Bond Law, the undertaking may be broader. See Merion Township School Dist. v. Evans, 295 Pa. 280, 145 A. 288 (1929).
 
 
 15
 Although the coverage provided in a particular bond may exceed the statutory requirements, the Pennsylvania Supreme Court has cautioned that
 
 
 16
 "the obligation of a bond cannot be extended beyond the plain import of the words used ... Obligations not imposed by the terms of the bond cannot be created by judicial construction or interpretation which extends the terms beyond their normal meaning."
 
 
 17
 Peter J. Mascaro Co. v. Milonas, 401 Pa. 632, 635, 166 A.2d 15, 17 (1960) (quoting Commonwealth v. Fidelity and Deposit Co. of Maryland, 355 Pa. 434, 50 A.2d 211 (1947)).
 
 
 18
 In Tioga County Comm'rs v. C. Davis, Inc., 439 Pa. 285, 266 A.2d 749 (1970), the court stressed the need for stability in an area of the law having great significance for numerous businesses which supply labor and material on public contracts. "When individuals supply labor or material to a bonded job, they should not have to check the exact terms of the bond but should be able to assume that the parties have obeyed the Legislature's mandate and included in the bond everything required by [the statute]." Id. at 289, 266 A.2d at 751. The existence of the Bond Law thus provides needed predictability to the law of public contracting.
 
 
 19
 The Tioga opinion lends some support to the sureties' argument that if a bond is to be read more expansively than required by the statute, the bond's terms should be explicit. A prime contractor, who is ultimately liable on a payment bond, should not bear the responsibility for unpaid labor and materialmen other than those mentioned in the Bond Law unless the bond expressly includes them.
 
 
 20
 In discussing the provisions of Miller Act bonds, the United States Supreme Court in J.W. Bateson Co., Inc. v. United States, 434 U.S. 586, 98 S.Ct. 873, 55 L.Ed.2d 50 (1978), used similar reasoning. Recognizing its obligation to construe the Act liberally so as to protect labor and materialmen, the Court nevertheless said it was not justified in ignoring
 
 
 21
 " 'plain words of limitation and imposing wholesale liability on payment bonds.... [W]e cannot disregard the limitations on liability which Congress intended to impose...'. It was Congress that drew a line between sub-subcontractors and those in 'more remote relationships' to the prime contractor."
 
 
 22
 Id. at 594, 98 S.Ct. at 877. The Bateson Court recognized the same policy concerns referred to in the Tioga opinion--the reasonable expectations of the parties to a governmental construction contract and the necessity of allowing them to arrange their affairs accordingly.[1]
 
 
 23
 The Pennsylvania courts have noted the close comparison between the aims and approach of the Miller Act and those of the state Bond Law. It is not surprising then, that decisions of the federal courts in Miller Act cases have been helpful in determining the proper construction of the state bonding law. See Commonwealth v. National Union Fire Ins. Co., 434 Pa. 235, 252 A.2d 593 (1969); Jacobs v. Northeastern Corp., 416 Pa. 417, 206 A.2d 49 (1965).
 
 
 24
 With this background, we turn to the language in controversy here--"or otherwise." The same phrase appeared in a payment bond in Philadelphia v. Fidelity & Deposit Co. of Maryland, 46 Pa.Super. 313 (1911). In that case, the language was taken from a city ordinance with which the bond was designed to conform.[2] The court said:
 
 
 25
 "The radical meaning of the word 'otherwise,' which is always a relative word, is different from that to which it relates.... [T]he controlling purpose of the ordinance was to secure payment to laborers and material men for the services and material used in the buildings of the city, whether subcontractor or otherwise--in a different manner--in another way--differently--in like respects--in the prosecution of the work provided for in the contract."
 
 
 26
 46 Pa.Super. at 318.
 
 
 27
 This definition does little to clarify the proper construction of the word in the bond used in this case. However, the court's language is consistent with the sureties' contention that "or otherwise" is meant to cover a claimant who supplies materials or personal service to the construction project. Such a person would not normally be considered a "subcontractor." In the Fidelity & Deposit case, the court ultimately did permit recovery by a plaintiff who had furnished labor and materials to the substitute prime contractor. But in the circumstances there, the protection of the bond was extended no further than a first tier claimant.
 
 
 28
 We conclude that as used here, the phrase "or otherwise" means only that a materialman as well as a subcontractor comes within the ambit of the bond. But that does not aid plaintiff, who is in the category of a subcontractor to a sub-subcontractor. To construe the term "or otherwise" to include subcontractors as remote from the prime contractor as Nicholson would not be consistent with the use of the word as explained by the Superior Court in the Fidelity & Deposit case.
 
 
 29
 More significantly, we feel that the expansive interpretation urged on us by plaintiff would allow every person who had a part in the construction, no matter how distant from the prime contractor, to come within the coverage of the bond. Whatever the abstract merits of such wide coverage, it is obviously far beyond what the legislature thought to be appropriate for municipal construction projects.
 
 
 30
 In balancing the competing interests, the legislature determined that a bond's protection should extend only to claimants who supplied labor or materials to the prime contractor or his subcontractors--in short, limiting coverage to second tier claimants. Plaintiff here, however, is beyond that demarcation point.
 
 
 31
 The limitation set by the legislature is consistent with its aim to provide a substitute remedy for municipal contractors who are denied the right to impose a mechanic's lien. See Valley Forge Indus. v. Armand Constr., Inc., 248 Pa.Super. 53, 374 A.2d 1312 (1977); Can-Tex Indus. v. Safeco Ins. Co., 460 F.Supp. 1022 (W.D.Pa.1978). Were this a private construction project, Nicholson would be too far removed in the contractual structure to be within the scope of the Mechanic's Lien Act.
 
 
 32
 We hold therefore that the ambiguous wording of the bond must be read in the light of the statutory plan devised by the Pennsylvania Legislature. Coverage beyond that mandated by the statute must be stated in explicit terms.[3] The required specificity is missing from the bond in this case.
 
 
 33
 Accordingly, the judgment of the district court will be reversed and the case remanded for the entry of judgment in favor of defendant.
 
 
 
 *
 The Honorable John Minor Wisdom, Circuit Judge, United States Court of Appeals for the Fifth Circuit, sitting by designation
 
 
 [1]
 The Court stated:
 "all of those concerned with Government projects--prime contractors, sureties, various levels of subcontractors and their employees--have been led to assume that the employees of a sub-subcontractor would not be protected by the Miller Act payment bond and to order their affairs accordingly. In the absence of some clear indication to the contrary, we should not defeat these reasonable expectations, particularly in view of the importance of certainty with regard to bonding practices on Government construction projects."
 434 U.S. at 593, 98 S.Ct. at 877.
 
 
 [2]
 The ordinance requiring bonding of municipal projects has since been superseded by state law
 
 
 [3]
 This result is consistent with the holding in Redevelopment Authority of Philadelphia v. Fidelity & Deposit Co., 665 F.2d 470 (3d Cir.1981), where a limitation period explicitly set forth in the bond prevailed over one established in the general state statute. It is the absence of such an express provision that leads to our conclusion in the case at hand