# S. A. Lindstrom Co. v. Pennsylvania National Mutual Casualty Insurance Co.

*Peter C. Paul,* for plaintiff.
*John G. Milakovic,* for defendant.

DOWLING, *J.,* January 11, 1989 — Is a surety discharged of its obligation under a payment bond when its principal, the general contractor, has paid a subcontractor who has failed to pay its subcontractor?

This case reaches us on stipulated facts which are as follows:

Defendant, Pennsylvania National Mutual Casualty Insurance Company, as surety, executed a payment bond in the principal sum of $3,286,591 with Susquehanna Valley Construction Corporation as principal. The payment bond related to a project involving the construction of the 63d Street Bridge in Swatara Township, Dauphin County. Susquehanna was the general contractor for the project and subcontracted a portion of the work to Eastern Prestressed Concrete Corporation which in turn sublet some of the work to plaintiff, S. A. Lindstrom Company.

Plaintiff was paid $16,656 by Eastern on account of its contract price of $41,640 which left a balance due from Eastern to Lindstrom of $24,984. Eastern

has failed to make payment of this sum and, in fact, has filed a petition in bankruptcy. Susquehanna has paid Eastern in full for the labor and materials supplied or furnished by Eastern, including its subcontract work performed by Lindstrom.

The specific question, therefore, is whether defendant, Pennsylvania National, is liable under its bond for Eastern's failure to pay plaintiff where its principal, Susquehanna, has paid Eastern for plaintiff's work. This is the narrow issue raised, as it is agreed that plaintiff performed its work satisfactorily, is due the amount which it seeks, and has given timely notice of its claim.

It appears to be a case of first impression as our research and that of counsel has failed to discover any Pennsylvania appellate decision directly on point.

The bond provides in pertinent part:

"Now, therefore, the condition of this obligation is such that if the above-bounden principal shall and will promptly pay or cause to be paid in full all sums of money which may be due by contract or otherwise, to any individual, firm, partnership, association, or corporation, for all material furnished or labor supplied or performed in the prosecution of the work, whether or not the said materials or labor entered into and became component parts of the work and for rental of the equipment used and services rendered by public utilities in, or in connection with the prosecution of such work, then this obligation to be void, otherwise to remain in full force and effect.

"The principal and surety, hereby, jointly and severally, agree with the obligee herein that any individual, firm, partnership, association or corporation, which has performed labor or furnished material in the prosecution of the work as provided, and any public utility which has not been paid in full

therefor, may sue in assumpsit on this payment bond in his, their, or its own name and may prosecute the same to final judgement for such sum or sums as may be justly due him, them or it, and have execution thereon. . . ."

Plaintiff contends that the language is clear and unambiguous and states simply that anyone who performed work on the project who has not been paid can sue the surety for the amount due, and that there is nothing in the bond which suggests that the surety is excused from its obligation because its principal (Susquehanna) failed to ensure that its payments to Eastern were properly applied. Defendant contends that the language states that the instrument becomes void upon the satisfaction of Susquehanna's payment for the work performed.

It is important to note that the bond incorporates by reference the provisions of the Pennsylvania "Public Works Contractor's Bond Law of 1967."[1] This law is set forth at 8 P.S. §191, et seq. and specifically provides in section 193:

"(a) Before any contract exceeding $5,000 for the construction, reconstruction, alteration or repair of any public building or other public work or public improvement, including highway work, of any contracting body is awarded to any prime contractor, such contractor shall furnish to the contracting body the following bonds, which shall become binding upon the awarding of said contract to such contractor:

---

1. "Recovery by any individual, firm, partnership, association or corporation hereunder shall be subject to the provisions of the 'Public Works Contractors' Bond Law of 1967,' approved December 20, 1967, P.L. 869, which act shall be incorporated herein and made a part hereof, as fully and completely as though its provisions were fully and at length herein recited."

"(1) A performance bond at 100 percent of the contract amount, conditioned upon the faithful performance of the contract in accordance with the plans, specifications and conditions of the contract. Such bond shall be solely for the protection of the contracting body which awarded the contract.

"(2) A payment bond at 100 percent of the contract amount. Such bond shall be soley for the protection of claimants supplying labor or materials to the prime contractor to whom the contract was awarded, or to any of his subcontractors, in the prosecution of the work provided for in such contract, and shall be conditioned for the prompt payment of all such material furnished or labor supplied or performed in the prosecution of the work. . . ."

Of considerable relevancy is another section of the Pennsylvania Bond Law, 194(b), which provides:

"Any claimant who has a direct contractual relationship with any subcontractor of the prime contractor who gave such payment bond but has no contractual relationship, express or implied, with such prime contractor may bring an action on the payment bond only if he has given written notice to such contractor within 90 days from the date on which the claimant performed the last of the labor or furnished the last of the materials for which he claims payment, stating with substantial accuracy the amount claimed and the name of the person for whom the work was performed or to whom the material was furnished."

If the surety's payment argument is valid, i.e., the bond was void upon payment, why should second-tier contractors be required to give 90-day notice of the claim? This would seem to be a useless act if they are precluded from going against a surety where the general contractor has already paid its

subcontractor. The purpose of the notice requirement would appear to be that after the 90-day period the general contractor is risk-free in paying its subcontractors, but before that time it is not. *United States v. James Stewart Co.,* 195 F.Supp. 715 (E.D. Idaho 1961).

The Pennsylvania Bond Law was patterned after the "Miller Act" (40 U.S.C.A. §270a, et seq.). This legislation governs all federal contracting agencies, and it has been held that Miller Act cases can be relied upon in interpreting the Pennsylvania Bond Law. *Nicholson Construction Co. v. Standard Fire Insurance Co.,* 760 F.2d 74 (3d Cir. 1985). One case arising under the Miller Act (then known as the Heard Act) has stated that:

"It has been held that a materialman may recover on the bond of the general contractor, even though he supplied material to the subcontractor and even though the subcontractor has already been paid in full." *Seaboard Surety Co. v. Standard Accident Insurance Co.,* 14 N.E.2d 778 (1938), citing *United States, Use of Hill v. American Surety Co.,* 200 U.S. 197 (1906); *Mankin v. United States, Use of Ludowici-Celadon Co.* 215 U. S. 533 (1910).

In the *Seaboard* case, the surety on the payment bond, which had honored the debt of a second tier subcontractor, was held to be entitled to subrogation rights by reason of its payment. The court said that the bills of the sub-subcontractor were paid by the surety "not as a voluntary act but by compulsion of law." *Seaboard* at 781.

The general law of suretyship is also indicative of the fact that in order for "payment" to constitute a discharge of a surety's obligation, there must be proper payment to the right creditor and to some other person. 74 Am.Jur.2d "Suretyship" section 94 provides in pertinent part as follows:

"A usual stipulation in bonds with sureties is that if the principal shall well and truly pay to a person named a stated sum within a certain time, the bond will be null and void; otherwise, it will remain in full force and effect. Where such an obligation exists, payment either by the principal or by the surety will, of course, effectually discharge it, at least as far as the rights of the creditor against the surety are concerned. To constitute payment, the money or other thing must go to the creditor for the purpose of extinguishing the debt, and the creditor must receive it for that purpose. If that is not done and no payment results in law, the surety is not discharged."

The point is that a general contractor must make sure that its payments are property applied in order to discharge its obligations. If mere payment by a principal to its subcontractor is held to discharge the surety from its obligations to all the beneficiaries who supplied labor or material to the subcontractor, then the coverage of those beneficiaries under the bond becomes meaningless. A principal could quickly discharge all of its and the surety's obligations by paying its subcontractors at any time without any notice and without ever having to be concerned with the rights of the second tier subcontractors who the Pennsylvania Bond Law specifically states are entitled to protection.

Defendant focuses on that provision in the bond which states that it is conditioned upon payment for material furnished or labor supplied, and if this is done, then the obligation is void, arguing that Susquehanna, the surety's principal, did pay for all work performed when it paid its subcontractor Eastern. We find this emphasis misplaced when one considers the intent of the bond and the pertinent provisions of the Pennsylvania Bond Law. While the instrument is conditioned on payment for material

furnished or labor supplied, it also states that it is conditioned on all sums due being paid to *any* individual, etc. who has performed in the prosecution of the work. We think the bond condition is properly interpreted to mean that it is void, not by payment to anyone, but rather payment to those to whom sums are due.

Defendant relies on *Nicholson Construction Co. v. Standard Fire Insurance Co., supra,* (applying Pennsylvania law) in support of its petition. The *Nicholson* court merely held that the broad and ambiguous language in the bond in that case could not be used to extend coverage beyond second tier subcontractors in light of the bond's language. In reaching that conclusion, the court cited *Tioga County Commissioners v. C. Davis Inc.,* 439 Pa. 285, 266 A.2d 749 (1970), which case noted that:

"When individuals supply labor or material to a bonded job, they should not have to check the exact terms of the bond but should be able to assume that the parties have obeyed the legislature's mandate and included in the bond everything required by [the statute]." *Id.* at 289, 266 A.2d at 751.

The quoted language is important because it stresses the fact that the bond should not, as the surety contends, be interpreted more narrowly than the Bond Law. Defendant suggests that the language of the bond sub judice should be read to provide less coverage than that intended by the legislature. However, defendant's interpretation is not supported by *Nicholson.* Indeed, as the above quotation indicates, courts should read surety bonds in light of the language and purpose of the Bond Law. Moreover, payment bonds are to be interpreted liberally in favor of those who supply labor and materials in order to effectuate the statutory purpose of protecting such persons. *J.W. Bateson Co. v. United*

*States,* 434 U.S. 586 (1978); *United States v. Avanti Contractor,* 750 F.2d 759 (9th Cir. 1984), cert. 474 U.S. 817.

Defendant claims that in *Manganas Printing Co. v. Joseph Bucheit And Sons Co.,* 601 F.Supp. 776 (W.D. Pa. 1985) (applying Pennsylvania law), the court interpreted bond language similar to that at hand and limited the surety's obligation to those sums which the prime contractor failed to pay.

Defendant's reliance upon *Manganas* is misplaced. First, although defendant states that *Manganas* interpreted a bond similar to the one before this court, the reported opinion does not quote the language of the bond at issue in this case. Second, the *Manganas* case did not deal with a dispute between a subcontractor and the surety and principal and the surety's obligation to subcontractors. Rather, the issue in that case was whether plaintiff's case was barred by the statute of limitations.

Accordingly, we enter the following

## VERDICT

And now, January 11, 1989, we find in favor of plaintiff S.A. Lindstrom Company and against defendant Pennsylvania National Mutual Casualty Insurance Company in the sum of $24,940 plus six percent simple interest[2] from August 24, 1985.

---

2. In Pennsylvania, a surety is liable for interest on those claims for which it is held liable to pay under a payment bond. *Lite-Air Products Inc. v. Fidelity & Deposit Co. of Maryland,* 437 F.Supp. 801 (E.D. Pa. 1971). Although this was a Miller Act case, state law was applied in determining whether interest is payable. *United States for use of Georgia Electric Supply Co. Inc. v. U.S. Fidelity and Guaranty Co.,* 656 F.2d 993 (5th Cir. 1981).

*Editor's note:* This case was settled following the Commonwealth Court's dismissal of the appeal.